**UNITED STATES of America**

**v.**

**Ellis Edwin BOLDING.**

**Crim. No. JFM–87–0540.**

United States District Court,
D. Maryland.

April 14, 1988.

Roann Nichols, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

M. Brooke Murdock, Asst. Federal Public Defender, Baltimore, Md., for defendant.

Before HARVEY, Chief Judge, MURRAY, RAMSEY, HARGROVE, SMALKIN, HOWARD, BLACK and MOTZ, District Judges, and NORTHROP, KAUFMAN, THOMSEN, MALETZ and YOUNG, Senior District Judges.

## OPINION

Defendant, Ellis Edwin Bolding, has pled guilty to a criminal information charging him with having escaped from federal custody from November 1, 1987 through November 20, 1987. Because Bolding's offense was committed after November 1, 1987, the sentencing guidelines promulgated by the United States Sentencing Commission under the Sentencing Reform Act of 1984 are here applicable. Bolding has filed a motion seeking to have the Sentencing Reform Act declared unconstitutional. The issues have been fully briefed, and on April 1, 1988, oral argument was held before six of the Judges of this Court.

We find the Act to be unconstitutional. In light of the plethora of opinions which have been written on the subject, we dispense with a statement of the background of the Act and a summation of the parties' arguments.

■ The constitutional infirmities which we perceive in the Act are simple and straightforward. They stem from our understanding of the respective roles of the legislative and judicial branches in the sentencing process and from what we believe to be the fundamental meaning of due process.[1] We start from the premise that Congress has the power to mandate minimum as well as maximum sentences of definite duration and amount, subject only to the proportionality requirement of the Eighth Amendment. In setting such sentences the members of Congress are, as the elected representatives of the people, themselves accepting responsibility for the deprivation of liberty which their action entails.[2] However, when Congress does not set definite sentences but rather a range of potential sentences, it has created a sphere of discretionary power which is inherently judicial in nature. The Sentencing Reform Act and the mandatory guidelines promulgated thereunder so narrowly restrict the exercise of the courts' discretion that they

1. The Department of Justice claims a role for the executive branch in the sentencing process and urges that the Commission should be placed within that branch. Of course, the Parole Commission is an executive agency whose constitutional status has been upheld. *See, e.g., Geraghty v. United States Parole Commission,* 719 F.2d 1199 (3d Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984). However, the conceptual basis for the Parole Commission's authority lies in the executive branch's power to execute judgments and its power to pardon. *See, e.g., Joost v. United States Parole Commission,* 535 F.Supp. 71, 74 (D.Kan.1982); *United States v. Fryer,* 402 F.Supp. 831, 834 (N.D.Ohio 1975), *aff'd,* 545 F.Supp. 11 (6th Cir.1976); U.S. Const. art. II, § 2. The Department has suggested no theory under which the executive branch has any proper role in the establishment of statutory penalties or the *imposition* of individual sentences. The former is a legislative function, the latter a judicial one and neither may be performed by an executive agency. *See generally Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 60, 102 S.Ct. 2858, 2865–66, 73 L.Ed.2d 598 (1982); *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928).

2. Congress's failure to accept responsibility for the guidelines for which it has provided under the Sentencing Reform Act is demonstrated by three statutory provisions which can be read as diminishing the guidelines' mandatory nature: 18 U.S.C. § 3553(a) (West 1985), directing a court to consider in sentencing "the history and characteristics of the defendant;" 18 U.S.C. § 3553(b) (West Supp.1988), permitting a court to consider a sentencing factor "of a kind, or to a degree not adequately taken into consideration" by the Commission; and 18 U.S.C. § 3661 (West 1985), providing that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a [defendant]" which a court is to receive and consider in imposing sentence. A like ambivalence is reflected in the legislative history of the Act. *See, e.g.,* 133 Cong.Rec. H10014–10021 (daily ed. Nov. 16, 1987). Undoubtedly, this ambivalence will lead to dramatically different interpretations of the Act by prosecutors, defense attorneys, courts and the Commissioners themselves concerning the power of a sentencing court to depart from the guidelines. Further, it may well be used as an excuse for a form of plea bargaining designed to avoid the guidelines' mandates. That these consequences should flow from legislation intended to assure uniformity, candor and integrity in the sentencing process would be both ironic and disturbing.

effectively negate it.[3] *See Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977); *United States v. Klein,* 80 U.S. (13 Wall.) 128, 147, 20 L.Ed. 519 (1871); *cf. United States v. Brainer,* 691 F.2d 691, 697 (4th Cir.1982). Thus, the effect of the Act and the guidelines is to violate the separation of powers doctrine by transferring judicial power from the federal courts, whose independence of judgment is constitutionally secured, to the Sentencing Commission, whose fealty to Congress and the President is statutorily prescribed.

■ Of related and equal concern to this institutional infirmity is a broader problem of due process—a concern for the fair treatment of each defendant. We do not hold that the Constitution guarantees to a defendant (at least in non-capital cases) "individualized sentencing." However, when a definite sentence is not statutorily mandated, a defendant being deprived of his liberty pursuant to a statute which sets a sentencing range is constitutionally entitled to an articulated exercise of discretion by the judge before whom he appears rather than to the mechanical application of formulae adopted by non-constitutional commissioners invisible to him and to the general public. The essence of due process is accountability, reason and a fair opportunity to be heard. These cannot be replaced by any administrative code, however extensively considered or precisely drawn.[4]

Because we find that the Sentencing Reform Act impermissibly places in the Sentencing Commission discretionary power entrusted by the Constitution to the federal judiciary, we need not decide the other constitutional issues raised by defendant.[5] We note, however, that we are not persuaded that the statutory mandate that three judges sit on the Commission so adversely impacts upon judicial resources that it impairs the courts from fulfilling their constitutional function. *See generally Nixon v. Administrator of General Services, supra,* at 443, 97 S.Ct. at 2790 (1977). On the other hand, although undoubtedly there are benefits flowing from the service of judges on the Commission, we have substantial concern that if the guidelines are upheld as mandatory limits on the courts' discretion, the participation of the commissioner/judges in what is, in effect, the enactment of legislation may violate the separation of powers doctrine. *See generally J.W. Hampton, Jr. & Co., supra,* at 406, 48 S.Ct. at 351; *The Federalist* No. 47, at 324 (J. Madison) (J. Cooke ed. 1961).[6]

A separate order is being entered herewith declaring the Sentencing Reform Act of 1984 unconstitutional. In accordance

---

3. Formal placement of the Commission within the judicial branch (as properly urged by the Commission's counsel) cannot alone save its constitutionality. Assuming that the establishment of mandatory sentencing guidelines for classes of cases (as opposed to sentencing in individual cases) is a judicial rather than a legislative function, *but see, infra,* the fact that at least one non-Article III Commissioner must concur in the promulgation of the guidelines and the other actions of the Commission causes a direct conflict with the *Northern Pipeline* doctrine.

4. We do not mean to denigrate the work of the Commission. The information which it has compiled and the sentencing factors which it has delineated are exceedingly valuable in bringing what may be rightly perceived as a needed uniformity to the sentencing process. However, the Commission's constitutionality cannot be upheld by the quality of its work product.

5. The constitutional defects in the Act which we have identified may be curable, perhaps by an amendment conferring full discretionary sentencing authority upon district judges but giving at the trial court level presumptive effect to the Commission's guidelines and providing for appellate review (under an abuse of discretion standard) of any sentence imposed outside of the guidelines. On appeal the relevant guidelines could be considered in determining the propriety of the trial court's exercise of discretion but would not be binding or dispositive. Under this procedure the ultimate power to sentence within statutory ranges would reside in the courts, where Article III compels it to be.

6. Counsel have not briefed or argued the effect of the Act and the guidelines on the Government's ability to enter into cooperating plea agreements. We therefore have not considered whether the executive branch's law enforcement function may be so substantially impaired by the guidelines as to raise a separation of powers question on that score as well.

with this ruling, Bolding will be sentenced under pre-existing law. However, we have concluded that we will, out of respect for a Congressional enactment of such magnitude, generally follow the practice of sentencing defendants committing offenses on or after November 1, 1987 under the 1984 Act until the constitutionality of the Act has been finally decided.