**UNITED STATES of America, Plaintiff,**

**v.**

**Bill Lee SCOTT, Defendant.**

**Crim. No. 88–031–JB.**

United States District Court,
D. New Mexico.

June 3, 1988.

William L. Lutz, U.S. Atty., C. Richard Baker, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff.

David L. Norvell, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS MATTER comes before the Court on Defendant Bill Lee Scott's motion for an order precluding application of the Sentencing Guidelines ["Guidelines"] promulgated by the United States Sentencing Commission ["Commission"] pursuant to the Sentencing Reform Act of 1984 ["Reform Act"], 28 U.S.C.A. §§ 991–98 (West Supp. 1988), on the grounds that the Reform Act violates the delegation doctrine and separation of powers.[1]  Scott was indicted and

---

1. Scott is only one of numerous defendants who have filed motions to invalidate the Guidelines on constitutional grounds.  The following actions have similar motions pending before this Court: 88–048, 88–052, 88–064, 88–084, 88–150, 88–151, 88–154, 88–155, 88–160, 88–161, 88–163,

charged with alleged violations of title 21, sections 841(a)(1) and 841(b)(1)(C), and title 18, section 2 of the United States Code. Scott's acts were allegedly committed after November 1, 1987. Therefore, if he is found guilty of these crimes, the Guidelines would apply.

### Statutory Framework

The Reform Act makes radical changes in the procedure and substance of sentencing in the federal criminal justice system. One of the primary goals of this new sentencing system is to eliminate "unwarranted sentencing disparity" by federal judges. 28 U.S.C. § 991(b)(1)(B); S.Rep. No. 98–225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3245 ["Ad.News"]. Instead of issuing guidelines itself, Congress created the Commission as a permanent agency within the Judicial Branch, and directed it to promulgate rules and policies consistent with the parameters contained in the statutory framework enunciated by Congress. 18 U.S.C. §§ 3551–59, 3561–66, 3571–74, 3581–86.

The Commission consists of seven voting members and two ex officio non-voting members. 28 U.S.C. § 991(a). The voting members are appointed by the President of the United States with the advice and consent of the United States Senate for staggered six-year terms; they may be removed by the President only for neglect of duty, malfeasance in office or other good cause. *Id.* At least three of the voting members must be Article III federal judges who are recommended to the President by the Judicial Conference of the United States.

To establish a new sentencing system to replace the "largely outmoded rehabilitation model," Ad.News at 3221, Congress directed the Commission to promulgate and distribute guidelines and policy statements for federal courts to use when imposing sentences. 28 U.S.C. § 994(a)(1). The proposed guidelines were to meet the purposes of sentencing which are defined by Congress as deterrence of criminal conduct, protection of the public from further crimes, rehabilitation of the defendant, and punishment commensurate with the seriousness of the offense. 18 U.S.C. § 3553(a)(2). The Guidelines were also to provide certainty and fairness in meeting the purposes of sentencing while avoiding unwarranted disparities and maintaining sufficient flexibility to permit individualized sentences. 28 U.S.C. § 991(b)(1)(B).

Specifically, the Reform Act directed the Commission to establish guidelines covering the following sentencing determinations: 1) whether to impose a term of imprisonment, probation, or fine; 2) the appropriate amount of a fine or length of imprisonment or probation; 3) whether to require supervised release after imprisonment; and 4) whether multiple sentences should run consecutively or concurrently. 28 U.S.C. § 994(a)(1), (3). The Commission has promulgated an unprecedented, detailed and complex set of Guidelines which will apply to Defendant Scott if he is found guilty of the charges against him.

In very general terms, Scott alleges Congress has impermissibly delegated power to determine what factors are most appropriate in sentencing. Scott argues that while Congress' power to delegate is fairly liberal, it is narrowly restricted when calling for criminal sanctions or when fundamental rights are affected. Additionally, relying on the court's decision in *United States v. Arnold*, 678 F.Supp. 1463 (S.D. Cal.1988), Scott argues the Commission as established and constituted offends the doctrine of separation of powers by unconstitutionally locating the Commission in the Judicial Branch.

In response, the Government argues Congress has not excessively delegated authority to the Commission because the Commission is constitutionally indistinguishable from numerous "administrative" agencies set up by Congress. As to Defendant's separation of powers contention,

88–168, 88–169, 88–178, 88–187, 88–221, 88–222, 88–233, 88–238, 88–239, 88–244, 88–251–1, 88–253, 88–255, and 88–279.

the Government argues the three judicial members of the Commission serve in their individual, and not their Article III capacity as federal judges. The Government maintains the Commission is an executive agency with executive functions, and to avoid the separation of powers problem, the Government suggests the Court simply sever Congress' language which designates the Commission as "an independent commission in the Judicial Branch."

### Standing

■■■ As an initial matter, the Court has determined that Defendant Scott has standing to challenge the validity of the Guidelines, and the issue is ripe for determination. To have standing a party must demonstrate "some actual or threatened injury." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). As long as there is a certain impending injury, a party need not await the threatened injury to obtain preventative relief. *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663–64, 67 L.Ed. 1117 (1923). Ripeness involves balancing the "fitness of the issues for judicial decision" against "the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■■■ The Court finds that Defendant Scott indeed has a "personal stake" in the outcome of the issue which is necessary to meet the "case or controversy" requirements of Article III. *See Buckley v. Valeo,* 424 U.S. 1, 11, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976). Without a clear understanding of likely punishment, Defendant Scott cannot make an informed decision as to whether he should tender a guilty plea or risk trial. Therefore, the threatened injury and the hardship on Defendant Scott would be substantial. The action is fit for review because it involves purely legal issues which require no further factual development. *Thomas v. Union Carbide Agricultural Products,* 473 U.S. 568, 581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985). Finally, there is nothing to gain from post-

poning consideration of Defendant's challenge.

### Separation of Powers

Defendant Scott argues the Commission itself is an unconstitutional entity which violates the separation of powers doctrine because it is located in the Judicial Branch. Scott maintains the composition of the Commission invites federal judges to engage in legislative activities, bestows the Executive with excessive control of its membership, and threatens the independence of the judiciary.

The Government maintains the Commission is an executive body, but argues Congress simply mislabeled the Commission by placing it in the Judicial Branch. Thus, for purposes of separation of powers, both the Government and Defendant Scott apparently maintain the Commission is unconstitutional as an independent Commission in the Judicial Branch.

The Commission itself disagrees, maintaining that the Commission is an independent body in the Judicial Branch that promulgates rules to aid the judicial function of pronouncing sentence. Apparently, the Government and the Commission cannot even agree on the proper character of the Commission. This disagreement demonstrates the difficulties in determining what Congress actually did when it created the Commission, and magnifies the constitutional infirmities of a formulaic approach to sentencing.

As a preface to its separation of powers analysis, the Court notes that our tripartite system of government confers separate and distinct powers on the Executive, Legislative, and Judicial Branches. The Framers of the Constitution embraced Montesquieu's view that maintaining independence between the branches of government was essential to the preservation of liberty. *Myers v. United States,* 272 U.S. 52, 116, 47 S.Ct. 21, 25, 71 L.Ed. 160 (1926). The basic structure of the Constitution reflects the principle that "[t]he accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self-ap-

pointed, or elective, may justly be pronounced the very definition of tyranny." *The Federalist No. 47,* at 244 (J. Madison) (Wills ed. 1982). The separation of powers doctrine, however, does not require "three airtight departments of government." *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977). Expansive delegations of authority from Congress to the Executive Branch have been tested by courts with great leniency because there is substantial overlap between powers and responsibilities of these two branches. As Justice Jackson stated:

> [T]here is a zone of twilight in which [the President] and Congress may have concurrent authority, or in which its distribution is uncertain.... In this area, any actual test of power is likely to depend on the imponderables rather than on abstract theories of law.

*Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 637, 72 S.Ct. 863, 871, 96 L.Ed. 1153 (1952) (Jackson J., concurring) (footnote omitted).

In contrast, the courts have strictly limited the enlargement of the judiciary's power. *See, e.g., Hayburn's Case,* 2 U.S. (2 Dall.) 408, 412, 1 L.Ed. 436 (1792). "[O]f the three branches it is the role of the judiciary that the Constitution most clearly and tightly confines within narrow borders." *In re Sealed Cases,* 838 F.2d 476, 516 (D.C.Cir.1988).

■ The federal judiciary was designed to stand independent of the Executive and Legislative Branches to maintain the checks and balances of the constitutional structure, and to guarantee that the process of adjudication remain impartial. *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 58, 102 S.Ct. 2858, 2864–65, 73 L.Ed.2d 598 (1982). Alexander Hamilton explained the importance of an independent judiciary:

> "[T]here is no liberty if the power of judging be not separated from the legislative and executive powers." (quoting

Montesquieu) And it proves ... that as liberty can have nothing to fear from the judiciary alone, but would have everything to fear with its union with either of the other departments....

*The Federalist No. 78,* at 394 (A. Hamilton) (Wills ed. 1982). As Hamilton noted, the independence of the courts is peculiarly essential to a limited Constitution because it is the court's duty "to declare all acts contrary to the manifest tenor of the Constitution void." *Id.* Thus, a judiciary free from control of the Executive and Legislative Branches is essential to adjudication of rights by judges who are free from potential domination by the other branches. It is for these reasons that the independence of the judiciary ought to be jealously guarded, and encroachments upon its powers by the other branches be rigorously scrutinized.

■ The Court concurs in and adopts the separation of powers analysis by Judge Brewster in *United States v. Arnold,* 678 F.Supp. 1463, 1469–72 (S.D.Cal.1988), which is hereinafter quoted: [2]

"The separation of powers doctrine lies at the heart of our constitutional structure of government. In establishing the three branches of government, the Legislative, the Executive, and the Judicial, the Framers conferred separate and distinct powers on each, together with correlative checks and balances, as a safeguard against the encroachment or aggrandizement of one branch at the expense of another. *Immigration & Naturalization Service v. Chadha,* 462 U.S. 919, 960, 103 S.Ct. 2764, 2788–89, 77 L.Ed.2d 317 (1983) (Powell, J., concurring).

. . . . .

"... The court agrees with the [defendant] and the Government that the Act impermissibly designates the Commission as a part of the Judicial Branch. Section 991(a) of the Act provides: '[t]here is established as an independent commission in the Judicial Branch of the United States a United States Commission....' Notwithstand-

---

**2.** Judge Brewster's Separation of Powers footnotes originally numbered 5–16 have been renumbered, and this Court has omitted footnote 5 and has added footnotes 12, 15, and 16 as its own.

ing the designation and placement of Congress, the Commission functions in a nonjudicial capacity.

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. U.S. Const., art. III, § 2, cl. 1. The Judicial Branch includes the federal courts that exercise this power, as well as certain judicial adjuncts employed under the direct supervision of the courts. *See United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). By contrast, the Commission decides no cases or controversies,[3] does not aid in the administration of the court system,[4] and its members are appointed by the President without the constitutionally required safeguards of life tenure and salary protection.

"The Commission is primarily charged with promulgating rules and policy statements interpreting and elaborating on standards enunciated by Congress.[5] As such, the Commission's duties and powers are distinctly nonjudicial in nature. In fact, the Act appears to contemplate a Commission which possesses powers and duties inherently executive in nature. In *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), the Supreme Court discussed the character of the different branches of government stating: '[i]nterpreting a law enacted by Congress to implement the legislative mandate is the very essence of "execution" of the law.' Accordingly, the functions of the Commission —interpreting, monitoring, and enforcing the mandate of the statute as laid out by Congress—appear to fall within the construction of what constitutes an executive function. Furthermore, this court is unable to find any other agency, commission, or council so empowered in the Judicial Branch.[6]

"Having found the Commission to be, in actuality, performing primarily executive duties and powers, its location in the Judicial Branch offends U.S. Const., art. III, § 2, cl. 1. *See Hayburn's Case,* 2 U.S. (2 Dall.) 408, 409, 1 L.Ed. 436 (1792); *United States v. Ferreira,* 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1852). As James Madison admonished:

> '[w]ere the power of judging joined with the Legislative, the life and liberty of the subject would be exposed to arbitrary controul, for *the judge* would then be *the Legislator.* Were it joined to executive power, *the judge* might behave with all the violence of an *oppressor.*'

*The Federalist No. 47* at 303 (Rositer ed. 1961) (emphasis in original).

"The government suggests that the court should sever the designating language from the Act rather than declare the Commission unconstitutional. In these circumstances, the court deems such judicial conduct inappropriate and unnecessary. In some cases, statutory language otherwise unconstitutional is properly severable from the statute as a whole. *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 107 S.Ct. 1476, 1480–81, 94 L.Ed.2d 661 (1987). However, in this case, striking the designating language and effectuating a *de facto* transfer of the Commission from the Judicial Branch to a different branch or to an independent status would appear to unduly frustrate Congressional intent.[7]

---

3. The only arguably quasi-adjudicative function performed by the Commission is the review of petitions for modification of the guidelines by defendants as set forth in 28 U.S.C. § 994(s).

4. The Commission's powers and duties differ substantially from other nonadjudicating judicial bodies such as the Judicial Councils, 28 U.S.C. § 332, the Judicial Conference, 28 U.S.C. § 331, and the Administrative Office, 28 U.S.C. § 601, which perform the necessary chore of administering the court system.

5. In establishing guidelines for use by sentencing courts, the Commission promulgates rules similar to those of other executive agencies such as the Occupational Safety and Health Administration, the Federal Trade Commission, and the Securities and Exchange Commission.

6. The Parole Commission which performs a similar role of rulemaking, policy interpretation, and administrative oversight is located in the Executive Branch. 18 U.S.C. § 4202 (1982).

7. The Senate Report on the legislation establishing the Commission states an intent to place the Commission in the Judicial Branch. The report notes "the Committee's *strong* feeling that, even under the legislation, sentencing should remain primarily a judicial function." S.Rep. No. 98–

"This court leaves to Congress the task of amending the Act, if it so chooses, to locate the Commission where it will, so long as it observes constitutional separation of powers constraints.

"Furthermore, even if the court severed the designating language, the Act would still unconstitutionally violate the doctrine of separation of powers because of the composition of the Commission. By mandating the inclusion of at least three article III judges, the Act unconstitutionally impairs, both quantitatively and qualitatively, the functions of the individual judge-Commissioners and the Judicial Branch as a whole.

"The doctrine of separation of powers does not require the three departments of government to remain 'hermetically sealed' from one another. *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). Rather, the Constitution envisions the three branches functioning independently within their separate areas, but cooperatively in their relations with each other. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson, J., concurring).

"The proper test for gauging the constitutionally permissible level of interdependence or interaction among the branches 'focuses on the extent to which [the challenged statute] prevents the [particular] Branch from accomplishing its constitutionally assigned functions.' *Nixon v. Administrator of General Services*, 433 U.S. at 443, 97 S.Ct. at 2790 (citing *U.S. v. Nixon*, 418 U.S. 683, 711–12, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974)). If it does, a further inquiry must be made as to whether that impact is justified by an overriding need to promote objectives within the constitutional authority of the acting branch. *Id.* at 425, 97 S.Ct. at 2780–81.

"The quantitative impairment of the judge-Commissioners is evident and needs little explanation. The judge-Commissioners are required to serve in a nonjudicial capacity on a full-time basis for at least six years.[8] Thus, article III judges undertake a full-time nonjudicial appointment which substantially, if not totally, impairs their ability to perform their article III duties. It is speculative to predict the individual impact thereafter, which by statute contemplates a part-time commitment as necessary to perform commission tasks. However, the court need not query about the future effect since an actual individual functional impairment exists presently.

"The quantitative impairment of the Judicial Branch is also clear, although in magnitude it is less damaging. The Act requires the appointment of at least three judges, but it does not provide for their replacement on the courts from which they are drawn. Furthermore, given the major roles that all judge-Commissioners have in the development of the Guidelines, they must inevitably recuse themselves from consideration of all future criminal cases involving sentencing issues. Presumptively, the absence of these judge-Commissioners results in an increase in the adjudicative workload of the remaining judges.[9] Although the court recognizes this problem, it is unable to conclude that this problem alone constitutes such a substantial impairment as to create a violation of the principle of separation of powers.

"The gravamen of the functional impairment problem stems from the qualitative impairment of the judge-Commissioners and the Judicial Branch. For federal judges to perform properly their judicial function, they must remain impartial and independent. The observation that '[i]mpartiality is one of the central, constitutionally ordained requirements of federal judicial office,' *In re Application of the President's Commission on Organized*

225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3342.

**8.** 28 U.S.C. § 992 provides for a six-year term except that the initial terms of the first Commission are staggered so that some judge-Commis-

sioners will serve less than a full six-year initial term.

**9.** Defendants' Supplemental Points and Authorities at Exhibit 1 (letter from Chief Justice Burger to President Reagan (December 13, 1984)).

*Crime; Subpoena of Scaduto*, 763 F.2d 1191, 1197 (11th Cir.1985), is supported by both the Framers' intent [10] and subsequent Supreme Court cases.[11]

"The independence and impartiality of the federal judicial office is threatened by the mandatory participation of three article III judges on the Commission. The act *mandates* article III judges to serve full-time on a permanent commission charged with policy-making, rule-making, supervisory, enforcement, and oversight responsibility respecting sentencing of defendants. The judges are mandated to serve presumably because as judges they bring a resource of experience and expertise to the Commission. However, in such service they participate in promulgating substantive rules,[12] and they face the threat of Presidential removal as Commissioners.

"There are serious questions as to whether a judge-Commissioner can maintain objectivity in carrying out the judge's courtroom duties. In *Scaduto*, the Eleventh Circuit held that the merely advisory service of article III judges on the President's Commission on Organized Crime threatened the impartiality of the individual judge-Commissioners. The court stated:

[a] judge who is charged with assisting and improving enforcement efforts against organized crime must adopt a

pro-government perspective which is ill-suited to his obligation to be neutral in the courtroom. The kind of information he might uncover through the investigatory activities of the Commission would further endanger his impartiality.

763 F.2d at 1197. The same dangers of loss of impartiality are present in this case. The judge-Commissioners must now wear two hats—one Executive and one Judicial. They sit with members of the Executive Branch, including the Attorney General, and are subject to removal by the President. Yet, they must also maintain their complete independence and impartiality in their role as article III judges.[13]

"However, even if the court determined that the judge-Commissioners' neutrality were not impaired, it is clear that the Judicial Branch is qualitatively impacted. The Act creates a permanent working relationship between the Judiciary and the Executive on matters affecting criminal law. This is not a case where the appointment of the judge-Commissioners can be construed as a conferral of power on the judges personally as Commissioners.[14] Rather, Congress 'assigned' to the Judicial Branch functions of a nonjudicial character which it required it to accept.[15]

"In making such a mandatory assignment, Congress has threatened the very

---

**10.** *See The Federalist No. 78* at 469 (Rositer ed. 1961); *The Federalist No. 39* at 245–46 (Rositer ed. 1961).

**11.** *See United States v. Will,* 449 U.S. 200, 218, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (1980).

**12.** In *Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the Supreme Court found that Florida's revised sentencing guidelines were not merely procedural guideposts because they had the force and effect of law, and they created a "high hurdle that must be cleared before discretion can be exercised...." *Id.* 107 S.Ct. at 2453. Accordingly, the Court found that application of the revised guidelines violated the *ex post facto* clause.

**13.** Unlike the situation in *Scaduto* where service by article III judges was not mandatory, the individual judge-Commissioners serve on the Commission in their role as article III judges. *See In re Application of the President's Commission on Organized Crime, Subpeona of Scarfo,*

783 F.2d 370, 376 n. 3, where the court distinguished voluntary service by judges on the President's Commission on Organized Crime from the congressionally mandated service by judges on the Sentencing Commission.

**14.** Thus, the court distinguishes this case from that present in *In re Application of the President's Commission on Organized Crime, Subpoena of Scarfo,* 783 F.2d 370 (3rd Cir.1986) and *Scaduto,* 763 F.2d at 1191. In the present case, the mandatory appointment of judge-Commissioners implicates the Judicial Branch, in addition to impairing the functioning of the judge-Commissioners individually.

**15.** The separation of powers was meant to ensure that different people would staff the three branches to protect against the concentration of power in the same hands. This danger is present whether a judge performs a nonjudicial duty as an individual or as a court. Comment, *Separation of Powers and Judicial Service on Presidential Commissions,* 53 U.Chi.L.Rev. 993 (1986) [*"Judicial Service"*].

**1492**

essence of the Judicial Branch—its actual and apparent impartiality and independence. The Judicial Conference is required to prepare a list of six potential judge-Commissioners for the President, from which the President selects at least three Commissioners. 28 U.S.C. § 991(a). Thus, Congress has involved the Judicial Branch in the selection of members to an ongoing executive commission. This assignment creates, in effect and appearance, an excessive intermingling of two branches of government. Furthermore, the service of the judge-Commissioners on an executive commission erodes the appearance of impartiality of the Judicial Branch. In appeals certain to come, the courts will be called upon to adjudicate disputes challenging various aspects of the work of the Commission. In ruling on the merits of these challenges, judges may be reluctant to set aside the work of their judicial colleagues. Even if no such problem actually occurs, the perception of non-impartiality by litigants and the public at large is sufficient to constitute a violation of the principle of separation of powers.[16]

"The parties can demonstrate no overriding need justifying inclusion of article III judges on the Commission. Congress could have selected a variety of options to achieve sentencing reform without requiring judicial service on the Commission. Judges could have been invited to consult with the Commission, or to advise it. Such assistance was and is available without resorting to the mandatory appointment of judges as voting members of the Commission.

"The court concludes that the Commission's makeup violates the doctrine of separation of powers to the extent it includes article III judges as members."

(End of quote from Judge Brewster's opinion.)

### Delegation of Powers Doctrine

■ The delegation of powers doctrine prohibits Congress from delegating its legislative power to another branch in violation of Article I of the United States Constitution. Article I, section 1, of the United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States...." Congress is authorized under Article I, section 8, "[t]o make all laws which shall be necessary and proper for carrying into Execution" its general power. The courts apply the following test to determine whether a delegation by Congress is lawful:

> If Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.

*J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928). Only twice has the Supreme Court struck down congressional delegations. *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) (Court struck down portions of the National Industrial Recovery Act of 1933); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) (same); *see Synar v. United States,* 626 F.Supp. 1374, 1383 (D.D.C.), *aff'd on other grounds sub nom., Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), for historical summary.

■ The Court bases its decision on its separation of powers analysis; therefore, it need not address Defendant Scott's delegation argument. However, the Court notes that based on the historical deference to congressional delegations of authority, the Court would probably find the Reform Act sets forth sufficient parameters to comply with the "intelligible principle" standard. The Reform Act provides policy statements and specific directives to guide the Commission in exercising its rule-making authority.

---

**16.** "[P]ublic confidence in the judiciary is indispensable to the operation of law; yet this quality is placed in risk whenever judges step outside the courtroom into the vortex of political activity." *Judicial Service* at 1018 n. 112.

The Reform Act directs the Commission to establish sentencing policies that: 1) punish in accordance with the recognized principles of criminal law; 2) eliminate sentencing disparities; and 3) maintain flexibility to accommodate mitigating or aggravating circumstances. In addition, the Reform Act contains a number of specific directives to further these policies. For example, the Reform Act directs the Commission to utilize a grid-like sentencing scheme which takes into account various categories of offenses as well as categories of defendants. 28 U.S.C. § 994(c). The Reform Act also specifies factors the Commission is to consider in categorizing the offenses, 28 U.S.C. § 994(c)(1)–(c)(7), and the Commission is required to assure the Guidelines reflect the general inappropriateness of considering the defendant's education, vocational skills, employment record, family ties and responsibilities, and community ties. 28 U.S.C. § 994(d) & (e). Thus, it is likely the Reform Act provides ample parameters to guide the Commission's exercise of delegated authority.

### Other Concerns

In this opinion I have declared the Guidelines unconstitutional on the narrow grounds that the composition and placement of the Commission violates the doctrine of separation of powers. There are, however, further problems with the Reform Act which were not raised by Defendant Scott, but on which I am compelled to comment because of the important issues they raise. These issues involve separation of powers and substantive due process concerns inherent in the sentencing process. The first concern involves the proper roles of the Legislative, Executive, and Judicial Branches in the sentencing process. The second concern involves the lack of procedural due process afforded to defendants under the complex and detailed sentencing scheme enacted by the Commission.

■■■■ My first and fundamental concern with the new sentencing system is that the sentencing process usurps and undermines the function of the judiciary in our system of government. The sentenc-ing process involves a delicate balance among the three branches of government. It is unquestioned that Congress has the ultimate authority to define federal crimes and their punishment. *E.g., United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). In addition, Congress may delegate to the Executive Branch some discretion relating to the character and duration of criminal punishments. Historically, Congress has established broad sentencing ranges that authorize federal judges to select a term within those ranges. *United States v. Grayson*, 438 U.S. 41, 47, 98 S.Ct. 2610, 2614, 57 L.Ed.2d 582 (1978). The right to try criminal offenses and upon conviction to impose the punishment provided by law is judicial. *Ex parte United States*, 242 U.S. 27, 41, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). Therefore, the separation of powers permits the sentencing process to be shared among the three branches. The difficulty lies in determining where to draw their respective lines of authority. Although case law gives little indication of where the lines should be drawn, it appears that the Guidelines as promulgated by the Commission have intruded into the sphere of judicial functions.

Congress by establishing a range of potential sentences has created a sphere of discretionary power which is inherently judicial. Once Congress has established a range of penalties, the selection of a sentence based on the circumstances of each individual case passes from the Legislative domain. Traditionally, the selection of a penalty has been made by the courts. The exercise of this discretion by impartial and independent judges is inherently a judicial function. It is inconceivable Congress could transfer this discretion to the Executive who lacks the independence and impartiality which is the hallmark of the judiciary. The rigid nature of the Guidelines effectively permit an essentially Executive body, whose members are appointed and can be removed by the President, to impose sentences on particular defendants.

■■■ Although, the Reform Act directs the Commission to establish categories of offenders and offenses, the statutory

framework and Guidelines promulgated by the Commission are so rigidly prescribed that their application results in imposition of sentence by a non-judicial body. This violates separation of powers by encroaching upon the judicial sphere. This is the very definition of tyrannical power James Madison warned against. As Madison explained, "where the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department, the fundamental principles of a free Constitution, are subverted." *The Federalist No. 47* at 245 (J. Madison) (Wills ed. 1982). The historical concern with protecting the judge's role as an impartial decision-maker also applies to his authority to impose sentences. The neutrality of the courts is assured by their institutional separateness and independence from the other branches. Control or influence by the Executive, impairs the neutrality of the courts, and violates substantive due process implicit in the separation of powers doctrine.

■■■ The grid-like approach to sentencing which assigns numerical point allocations based on offender and offense characteristics leaves no room for judicial determination of their appropriate weight based on the circumstances of each case. This type of formulaic approach usurps the judiciary function of exercising discretion created by the broad ranges established by Congress. The weighing of factors by an independent and impartial judge is the essence of the judicial function and is at the core of due process, particularly when depriving an individual of his liberty.[17] These comments do not change the Court's decision that Congress may probably delegate authority to the Commission to establish guidelines which assist the courts in impos-

ing sentences. The Guidelines promulgated by the Commission, however, are much more than guideposts; they have the force and effect of substantive law.

■■■ This formulaic approach is not the only troublesome aspect of the Reform Act and the Guidelines—there are also serious problems with the Reform Act's provision which authorizes the Commission to adjudicate individual petitions to modify the Guidelines used in a defendant's sentence. 28 U.S.C. § 994(s). This provision permits the Commission to modify the Guidelines used in a defendant's sentence on the basis of changed circumstances, including community view of the gravity of the offense, public concern, and the deterrent effect. The reduction of a sentence by altering the underlying judgment, as opposed to granting clemency, is a judicial function. *United States v. Benz*, 282 U.S. 304, 311, 51 S.Ct. 113, 115, 75 L.Ed. 354 (1931). Unlike determining broad categories, this provision appears to permit the Commission to alter individual sentences based on the circumstances of each case. This is clearly a judicial function.

In addition to these separation of powers and substantive due process concerns, the Court questions whether the formulaic nature of the Guidelines themselves violate Defendant Scott's rights to procedural due process. The right to fair procedure reasonably calculated to produce a correct determination of the basis for imposition of penal sanctions lies at the heart of the due process of law protected by the fifth amendment. The United States may not deprive an individual of his liberty unless such a procedure is first accorded. *See Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 119–20, 18 L.Ed. 281 (1866); *Reid v. Covert*, 354 U.S. 1, 5–6, 77 S.Ct. 1222, 1225, 1 L.Ed.2d

---

17. Not only are a defendant's substantive due process rights violated by the court's inability to weigh factors, but they may also be violated by the Commission's charge offense approach to sentencing. A defendant, for example, may be charged with two counts to distribute a total of 150 kilograms of marijuana. The defendant may agree to plea to one count which charges him with intent to distribute 50 kilograms. Under the Guidelines, however, he will be sentenced as if he had stood trial and had been convicted of the 150 kilograms as charged in the indictment or information. Thus, the defendant is treated as if he is guilty as charged, although, under the law he stands guilty of intent to distribute 50 kilograms. This is tantamount to allowing the lawyers to bargain over the sentence. It also has the effect of transferring sentencing discretion from the court to the prosecutor who determines what charge to bring against individual defendants.

1148 (1957). This concept of individualized sentencing is firmly entrenched in our present jurisprudence. *United States v. Barker,* 771 F.2d 1362, 1365 (9th Cir.1985).

■ Due process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the court. *United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987). A defendant, therefore, may not be sentenced on the basis of "materially untrue" statements, "misinformation," or incorrect assumptions. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). There is a strong public interest in the imposition of sentences based upon an accurate evaluation of the particular offender and designed to aid in his personal rehabilitation. *Verdugo v. United States,* 402 F.2d 599, 611 (9th Cir.1968). Accordingly, appellate courts have consistently vacated sentences when imposed mechanically or according to a judge's preconceived policy. *E.g., United States v. Lopez–Gonzales,* 688 F.2d 1275, 1277 (9th Cir.1982) (see cases cited therein).

■ This Court agrees with the number of courts who have found that the "mechanical formulas and resulting narrow ranges of sentences prescribed by the Guidelines violate defendants' right to due process of law under the fifth amendment by divesting the Court of its traditional and fundamental function of exercising its discretion in imposing individualized sentences according to the particular facts of each case." *United States v. Lopez,* 684 F.Supp. 1506 (C.D.Cal.1988) (en banc); *see also United States v. Frank,* 682 F.Supp. 815 (W.D.Pa.1988); *United States v. Elliott,* 684 F.Supp. 1535 (D.Colo.1988); *United States v. Bolding,* 683 F.Supp. 1003 (D.Md.1988).

In sum, the Court finds that the delegation of power from Congress to the Commission is probably proper, but the composition and placement of the Commission violates the separation of powers. Therefore, the Guidelines issued by the Commission are invalid because they were promulgated by an unconstitutional entity. In addition, the Court notes that the rigid and mandatory nature of the Guidelines results in an impermissible intrusion on the sphere of judicial functions, and may violate a defendant's substantive and procedural due process rights. Accordingly, Defendant Scott, if found guilty of the offenses charged, will be sentenced as if his conduct took place prior to November 1, 1987.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that Defendant's motion to find the Guidelines invalid and to preclude their application be, and it hereby is, granted.