**UNITED STATES of America,**

v.

**Dennis Edward KANE and David George Palmer.**

**Crim. A. No. CR87–37R.**

United States District Court,
N.D. Georgia,
Rome Division.

June 28, 1988.

---

W. Wright Gammon, Jr., Cedartown, Ga., for Dennis Edward Kane.

Larry J. Barkley, Rome, Ga., for David George Palmer.

Nicolette S. Templer, Asst. U.S. Atty., Atlanta, Ga., for U.S.

## ORDER

HAROLD L. MURPHY, District Judge.

A jury found Defendants Dennis Edward Kane and David George Palmer guilty of kidnapping, in violation of 18 U.S.C. §§ 1201 and 2, and of interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. §§ 2312 and 2. Because their offenses occurred after November 1, 1987, they were subject to being sentenced by application of the sentencing guidelines promulgated by the United States Sentencing Commission (the Commission) pursuant to the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–998 (the Act).

Both Defendants challenged the constitutionality of the sentencing guidelines. At their sentencing hearings, the Court declared the guidelines unconstitutional and imposed sentence as if their crimes had been committed prior to November 1, 1987. This Order is entered to further explain, and is incorporated into, the oral Order of the Court by which the defendants' sentences were imposed.

The defendants contest the constitutionality of the Act on the following grounds: First, that the Act constitutes an improper delegation of Congressional legislative power to the Commission to determine criminal sanctions; second, that the Act violates the separation of powers doctrine by establishing the Commission in the Judicial Branch of the United States Government, by conferring quasi-legislative power on Article III judges, who are required to serve on the Commission, and by giving the President removal power over the judge-commissioners; and third, that the application of the guidelines violates their rights to due process of law by depriving them of sentences imposed through the application of judicial discretion.[1]

---

1. In the case of *United States v. Tomkiel,* Crim. Action No. CR88–01R, pending before this Court, the Commission filed an *amicus curiae* brief in support of the constitutionality of the guidelines. The Commission has not filed a brief in instant case, however, the Court will

Numerous United States District Courts have faced similar challenges to the Act and the sentencing guidelines. For example, in the following cases, district courts have held the guidelines unconstitutional. *United States v. Russell*, 685 F.Supp. 1245 (N.D.Ga.1988); *United States v. Erves*, No. CR 87–478A, slip op. (N.D.Ga. March 22, 1988); *United States v. Brodie*, 686 F.Supp. 941 (D.D.C.1988); *United States v. Allen*, 685 F.Supp. 827 (N.D.Ala.1988) (en banc); *United States v. Lopez*, 684 F.Supp. 1506 (C.D.Cal.1988) (*en banc*); *United States v. Bolding*, 683 F.Supp. 1003 (D.Md. 1988) (*en banc*); *United States v. Frank*, 682 F.Supp. 815 (W.D.Pa.1988); *United States v. Arnold*, 678 F.Supp. 1463 (S.D. Cal.1988); *United States v. Estrada*, 680 F.Supp. 1312 (D.Minn.1988). Other courts have upheld their constitutionality. *See, e.g., United States v. Alves*, 688 F.Supp. 70 (D.Mass.1988); *United States v. Chambless*, 680 F.Supp. 793 (E.D.La.1988); *United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal.1988). The Supreme Court has granted a petition for writ of *certiorari* before judgment in a case pending before the Eighth Circuit. *See United States v. Mistretta*, —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988).

The decisions of *Arnold* and *Ruiz–Villanueva* discuss the history and purpose of the Act, and the Court therefore shall not provide a general discussion of these matters. Further, the Court is in substantial agreement with the findings, reasoning, and conclusions of the district courts in *Russell* and *Arnold*. The Court adopts the analyses of those opinions insofar as they are not inconsistent herewith.

In summary, the Court recognizes the authority of Congress to restrict or eliminate the sentencing discretion of the federal courts by setting determinant sentences for violations of federal criminal statutes. It follows that Congress could enact specific guidelines to channel the discretion of judges in sentencing. Theoretically, Congress could delegate this authority.

take judicial notice of the arguments made in the Commission's *Tomkiel* brief in addressing

Neither the Executive nor the Judiciary, however, is a proper delegatee of this power. The constitutionally and statutorily established roles of the Executive and the Judiciary in the criminal justice system are inherently and fundamentally incompatible with what is in effect the drafting and enacting of sentencing laws. Neither the Executive, who prosecutes, nor the Judiciary, which imposes sentence, has any proper role in legislating the sentencing laws. Because of the incompatibility of the established roles of these coordinate branches with such power, placement of the Commission in either the Judiciary or in the Executive violates the doctrine of the separation of powers. Moreover, the composition of the Commission itself violates the separation of powers doctrine. The Act, therefore, and its progeny, the sentencing guidelines, are unconstitutional. Because the Court finds the Act unconstitutional on separation of powers grounds, it is unnecessary to reach the defendants' due process challenge to the Act.

### I. Delegation of Congress's Power to Determine Criminal Penalties.

The Supreme Court has stated that it is "indisputable" that "the authority to define and fix the punishment for crime is legislative." *Ex Parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). *See also Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) (determining punishment for crimes is a legislative function and courts cannot impose sentences not authorized by Congress).

The Supreme Court has consistently upheld Congress's power to delegate its legislative power. *See, for historical review of the non-delegation doctrine, Synar v. United States*, 626 F.Supp. 1374, 1383–84, (D.D.C.), *aff'd on other grounds, sub nom., Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). The Court has "invalidated a statute as an undue delegation of legislative power only

the issues in this case.

twice. *See A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935)." *Russell,* 685 F.Supp. at 1247. On each occasion, the Court struck down the delegation at issue on the ground that it failed to provide sufficiently "intelligible principles" to guide the exercise of the authority delegated.

Most of the courts that have addressed the non-delegation challenge to the sentencing guidelines have held the delegation proper. At least one court, however, has held that Congress's authority to delegate does not extend to the "basic policy decisions of law enforcement, of criminal control, and of punishment" implicated in the Act and guidelines. *See Brodie,* 686 F.Supp. at 950. Courts also have held that the delegation to the Commission fails for lack of "intelligible principles" to guide the Commission's wielding of the power delegated. *See, e.g., id.*

Even assuming that Congress may delegate its power to fix punishment for crimes, and assuming the existence of sufficiently intelligible principles in the Act, neither the Executive nor the Judiciary can be a proper delegatee of this power. Thus, while theoretically Congress could delegate this power, in practice it cannot.

## II. The Separation of Powers.

In establishing the three branches of government, Legislative, Executive, and Judicial, the Framers conferred separate and distinct powers on each, together with correlative checks and balances, as a safeguard against the encroachment or aggrandizement of one branch at the expense of another. *Immigration and Naturaliza-*

tion Service v. Chadha, 462 U.S. 919, 960, 103 S.Ct. 2764, 2788, 77 L.Ed.2d 317 (1983) (Powell, J., concurring). Moreover, one branch cannot expand its power even if the expansion is authorized by another branch. *See Buckley v. Valeo,* 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1975).

### A. The Location, Composition, and Function of The Commission.

The Act explicitly locates the Commission in the Judicial Branch. *See* 28 U.S.C. § 991(a). The Defendants contend, and the government concedes, that this placement violates the separation of powers.[2]

The Commission includes seven voting and two *ex officio* non-voting members, appointed by the President and removable by him for "neglect of duty or malfeasance in office or for other good cause shown." *See* 28 U.S.C. § 991(a). At least three voting members must be article III judges, selected from a list of six judges recommended to the President by the Judicial Conference of the United States. This composition gives the Commission an executive character. *See Russell,* 685 F.Supp. at 1249; *United States v. Erves,* No. CR 87–478A (N.D.Ga. March 22, 1988).

As do many executive agencies, the Commission wields what is often called "quasi-legislative" power. The Commission's function is to promulgate binding rules and "guidelines that virtually mandate that a judge impose a specified sentence within a narrowly circumscribed range." *Russell,* 685 F.Supp. at 1247. The Commission does not act in specific cases or controversies. It sets prescriptive, substantive, rules binding on all federal courts throughout the nation. Thus, by its function and purpose, its power is non-judicial.[3]

2. In response to Tomkiel's attack on the Act, the Commission's brief argues that the Commission is properly placed in the Judicial Branch. It contends that it cannot be located in the Executive Branch because of the incompatibility of the Commission's work with the Executive's prosecutorial function. The Court agrees with the later contention.

3. Several courts have held that when Congress sets a range of potential sentences, it creates a sphere of discretionary power that is inherently

judicial in nature; therefore, under this analysis, the Act and the guidelines violate the separation of powers doctrine by transferring judicial power from the federal courts to the Commission. *See Bolding,* 683 F.Supp. at 1004; *Brodie,* 686 F.Supp. at 950. This Court, however, is of the opinion that Congress could narrow these ranges of sentences, and that such action, outside of specific cases, would remain legislative in character.

As has been held by a number of courts, the Commission's duties and powers, those of interpreting, monitoring, and enforcing the mandate of the statute as laid out by Congress, are most properly characterized as executive. *See, e.g., Arnold,* 678 F.Supp. at 1469; *Russell,* 685 F.Supp. at 1248. The function of "flesh[ing] out the details of a statutory scheme," the Supreme Court has held, is "the very essence of 'execution of the law.'" *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 3192, 92 L.Ed.2d 583 (1986) (citation omitted).

*B. Placement of the Commission in the Judiciary.*

■ The judicial power of the United States is limited to the resolution of cases and controversies. U.S. Const., art. III, § 2, cl. 1. The Supreme Court has stated that "neither the legislative nor executive branches, can constitutionally assign to the judiciary any duties, but such as are properly judicial and performed in a judicial manner." *See Hayburn's Case,* 2 U.S. (Dall) 409, 412, 1 L.Ed. 436 (1792).

This Court agrees with and adopts the reasoning of the district courts in *Russell* and *Arnold* which concluded that the placement of the Commission in the Judicial Branch violates the separation of powers. *See Russell,* 685 F.Supp. at 1248–1249; *Arnold,* 678 F.Supp. at 1470. The Commission promulgates substantive rules for sentencing criminal defendants. Its power is not merely "in aid of the judicial function," as is, for example, the proper function of the courts to fashion rules of procedure. The power of the Commission is incongruous with the judicial power to impose sentence. *Cf. Ex Parte Siebold,* 100 U.S. (10 Otto) 371, 398, 25 L.Ed. 717 (1879) (delegation to judiciary of power to appoint election commissioners not improper in part because no "incongruity in the duty required"). "The power to set prescriptive, mandatory sentencing rules is not confided in the judiciary by the Constitution. It is therefore a power that the federal courts must "'carefully abstain from exercising.'" *Russell,* 685 F.Supp. at 1249, *citing Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911).[4]

*C. The Placement of the Commission in the Executive.*

The government contends that the Court should ignore the "label" given by Congress and locate the Commission where its function and composition indicates, in the Executive Branch.

The Court will not ignore the clear language of Congress in placing the Commission in the Judicial Branch because severance of this designating language would frustrate express Congressional intent. In considering placement of the Commission in the Executive Branch, Congress expressed doubts about whether such placement would violate separation of powers principles. *See* H.R. 96–1396, 96th Cong., 2d Sess. (1980). The House Report noted that assignment to the Executive branch would alter the relationship between Congress and the Judiciary regarding sentencing. *Id.* at 489, 490; *see also* H.R.Rep. No. 98–1017, 98th Cong., 2d Sess. 105–08 (1984).[5] The Senate Report notes "the Committee's strong feeling that, even un-

---

**4.** "Were the power of judging joined with the Legislative, the life and liberty of the subject would be exposed to arbitrary controul, for *the judge* would then be *the Legislator.* Were it joined to the executive power, *the judge* might behave with all the violence of an *oppressor.*" *The Federalist No. 47* at 303 (Rositer Ed.1961) (emphasis in original), quoted in *Arnold,* 678 F.Supp. at 1470.

**5.** In its *amicus* brief filed in *Tomkiel,* the Commission states the following:
And we do take seriously—although we reject —defendants' suggestion that the vice of delegating rulemaking power to a commission housed in the judicial branch is that it unites policy-making power with judicial power in a manner that is dangerous to liberty. But we hasten to point out that, in this case, Congress determined that the more *serious* threat to liberty would come from uniting the *prosecutorial* power of the executive branch with the power to make binding rules with respect to sentencing.
Brief of the Sentencing Commission at 33–34 n. 7 (emphasis in original). Which threat would be the more serious need not be answered, because either is sufficient to make impermissible the assumption of such power by the Judiciary or the Executive.

der the legislation, sentencing should remain primarily a judicial function." S.Rep. No. 98–225 at 159, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3182, 3342; *see Arnold,* 678 F.Supp. at 1470.

■ Even were the Court disposed to ignore the language and intent of Congress, the Court could not "locate" the Commission in the Executive Branch because placement there likewise would violate the separation of powers doctrine.

The Executive can have no proper role in promulgating binding sentencing rules because of its role as prosecutor of federal criminal defendants. *See Brodie,* 686 F.Supp. at 950. The government contends that the Executive may make binding rules that affect sentencing because the actions of the Parole Commission affect criminal sentences and the Parole Commission's constitutionality has been consistently upheld. The constitutional basis for the Parole Commission's authority, however, lies in the power of the Executive to execute judgments and to pardon. *See Bolding,* 683 F.Supp. at 1004 n. 1; *citing Joost v. United States Parole Commission,* 535 F.Supp. 71, 74 (D.Kan.1982); *United States v. Fryer,* 402 F.Supp. 831, 834 (N.D.Ohio 1975), *aff'd,* 545 F.2d 11 (6th Cir.1976). The sources of executive power to execute judgments and to pardon provide no constitutional foundation for the power of the Sentencing Commission acting as an Executive organ.

It is true that in certain limited, specialized areas, Congress has properly delegated its law-making authority in criminal matters to the Executive. *See, e.g., United States v. Daniel,* 813 F.2d 661 (5th Cir. 1987) (separation of powers not violated by delegation to Attorney General of power to reclassify controlled substances, even though such reclassification affected maximum penalty for distribution of substances); *see also United States v. Womack,* 654 F.2d 1034 (5th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982); *United States v. Gordon,* 580 F.2d 827, 840 (5th Cir), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.

2d 711 (1978). Such delegation of legislative power in these limited areas may be justified because of the need for expertise and specialization, which is a traditionally proper basis for delegating rule-making authority to administrative agencies. In any event, these limited delegations are not analogous to the comprehensive, national, rule-making authority delegated to the Commission.

The government, thus, has suggested no valid theory under which the Executive may exercise any proper role in the establishment of statutory penalties or the imposition of individual sentences. "The former is a legislative function, the latter a judicial one and neither may be performed by an executive agency." *Bolding,* 683 F.Supp. at 1004 n. 1, *citing Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 60, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982); *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928).

The Court further concludes that were the Commission located in the Executive Branch, the statutorily mandated service of article III judges on the Commission would violate the separation of powers doctrine. The proper test for evaluating the constitutionally permissible level of interdependence or interaction among the branches, "focuses on the extent to which [the challenged statute] prevents the [particular] Branch from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977).

This Court is of the opinion that the quantitative impairment to the Judiciary resulting from the service of three article III judges on the Commission would not, in itself, be unduly burdensome on the functioning of the Judiciary. Nevertheless, it would be a difficult line-drawing exercise to determine at what point the service of federal judges in executive agencies and commissions would quantitatively impair the Judiciary's functioning such that a violation of the separation of powers would occur.

Be that as it may, the Court believes that the doctrine is violated by the qualitative impairment of the Judiciary by the mandatory service of article III judges on the Commission. Not only is the impartiality of the individual judge-commissioners implicated, placement of the Commission in the Executive branch would impermissibly create a "permanent working relationship between the Judiciary and the Executive on matters affecting criminal law." *Arnold,* 678 F.Supp. at 1472. As such, the Act would threaten "the very essence of the Judicial Branch—its actual and apparent impartiality and independence." *Id.; see also In re Application of President's Commission on Organized Crime Subpoena of Scaduto,* 763 F.2d 1191 (11th Cir.1985) (service of one federal judge on presidential commission on organized crime violated separation of powers doctrine because of the potential to impair the actual and apparent functioning of the Judicial Branch). The appointment and removal power of the President over the judge-Commissioners further impairs the apparent impartiality of the Judiciary. *Arnold,* 678 F.Supp. at 1471; *Russell,* 685 F.Supp. at 1251.

Moreover, the government has demonstrated no overriding need to justify inclusion of article III judges on the Commission. Congress could have selected a variety of other options to effect sentencing reform without judicial service on the Commission. Judges, for example, could have been called to consult or advise the Commission. *See Arnold,* 678 F.Supp. at 1472.

### III. Severance of the Guidelines.

■ Several courts have held that the sentencing guidelines could be severed from the Act and defendants sentenced in accordance with the basic principles set out in the legislation. *See, e.g., United States v. Estrada,* 680 F.Supp. 1312 (D.Minn. 1988). The *en banc* court for the District of Maryland, alternatively, has held the guidelines unconstitutional but has indicated that, in deference to Congress, it will continue to use the guidelines in sentencing. *See U.S. v. Bolding,* 683 F.Supp. 1003 (D.Md.1988).

Severance of the guidelines, however, would effect such a radical change in the Act as to amount to writing a new law. *Arnold,* 678 F.Supp. at 1472; *Russell,* 685 F.Supp. at 1251–1252. Such a task should be left for Congress. Further, the Court cannot hold the guidelines to be valid as the past acts of the Commission, because "it is impossible to exclude the influence of the three judge-Commissioners" from the Commission's work product. *Russell,* 685 F.Supp. at 1252, *citing Arnold,* 678 F.Supp. at 1472.

ACCORDINGLY, the Court holds that the Sentencing Reform Act of 1984 is unconstitutional; the defendants' sentences are imposed as if their crimes had occurred prior to November 1, 1987. Until such time as the United States Supreme Court or the United States Court of Appeals for the Eleventh Circuit rules otherwise, criminal defendants appearing before this Court shall be sentenced under the law as it existed prior to November 1, 1987, the effective date of the Sentencing Reform Act of 1984.