UNITED STATES of America, Plaintiff,

v.

Lloyd JOHNSON, Leon Willis and Roy Hutton, Defendants.

UNITED STATES of America, Plaintiff,

v.

John M. MISTRETTA and Nancy L. Ruxlow, Defendants.

UNITED STATES of America, Plaintiff,

v.

Charles ROBINSON, Defendant.

Nos. 87–00276–01/03–CR–W–6, 87–00278–01/02–CR–W–6 and 87–00279–01–CR–W–6.

United States District Court, Missouri, W.D.

April 1, 1988.

Dissenting Opinion April 5, 1988.

K. Preston Dean, Thomas H. Newton, Asst. U.S. Attys., Kansas City, Mo., for U.S.

James E. Brown, Asst. Federal Public Defender, Kansas City, Mo., for Lloyd Johnson.

Allen Kent Brown, Kansas City, Mo., for Roy Hutton.

Bruce Campbell, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for Leon Willis.

Chris Harlan, Asst. Federal Public Defender, Kansas City, Mo., for John M. Mistretta.

Judith S. Barber, Shook, Hardy & Bacon, Kansas City, Mo., for Nancy L. Ruxlow.

Foster C. Collins and J. Earlene Farr, Dietrich, Davis, Dicus, Rowlands, Schmitt & Gorman, Kansas City, Mo., for Robinson.

## MEMORANDUM AND ORDER

SACHS, District Judge.

The defendants in these cases are awaiting sentencing under the new Sentencing Guidelines. They challenge the constitutional status of the Sentencing Commission that produced the Guidelines. Briefs have been filed and arguments heard by seven judges of this district who are responsible for the processing of criminal cases.

It is my conclusion, and I am authorized to say it is the view of three other judges of this district who have presently formed an opinion,[1] that the Guidelines are not subject to valid challenge based on claims that (1) the Sentencing Commission lacks constitutional status or (2) there has been

1. Judges Elmo B. Hunter, D. Brook Bartlett and Dean Whipple. The judges do not necessarily concur in the observations made herein. Chief Judge Wright expresses disagreement with the result and expects to file a dissenting opinion on April 5, 1988.

an unconstitutional delegation of legislative power.

The unlawful delegation contention has been rejected in both the California decisions referred to below. Defendants' counsel concedes that no district judge has yet announced acceptance of that claim. Substantive guidelines for punishment within statutory limits seem comparable in a practical sense to the guidelines of the Parole Commission, a body clearly located in the Executive Branch. While almost unique in that they have an impact on judicial conduct, the Sentencing Guidelines are otherwise similar to substantive rule-making, as in employee safety, environmental protection, trade regulation and the like.

A troubling contention is that Congress may now have delegated one of its "core" legislative obligations to the Sentencing Commission. It has been suggested that a theory of nondelegable legislative duties be created to "deny an executive agency the ability to promulgate regulations ... that affect the civil liberties of individual persons," at least absent "clear legislative circumscription of the agency's powers." 1 Rotunda, Nowak & Young, *Treatise on Constitutional Law* (1986) 294 n. 4 (citing *Kent v. Dulles*, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), and scholarly commentary). *See also* the concurring opinion of Justice Brennan in *United States v. Robel*, 389 U.S. 258, 275, 88 S.Ct. 419, 430, 19 L.Ed.2d 508 (1968). Executive classification of controlled substances already determines judicial sentencing power in one important area of criminal law, however. Such delegation has been approved, although the authority must be carefully exercised. *United States v. Spain*, 825 F.2d 1426 (10th Cir.1987).

Perhaps defendants' strongest unlawful delegation theory would be that only Congress may fix a penalty. This seems to be implied in *United States v. Grimaud*, 220 U.S. 506, 522–3, 31 S.Ct. 480, 485, 55 L.Ed.2d 563 (1911). It has been said that "the legislature cannot shift its task of fixing punishment either to the courts ... or apparently to administrative agencies, particularly in the absence of guidance or a clear delegation." *United States v. Batchelder*, 581 F.2d 626, 631–2 (7th Cir.1978), *reversed*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). The Supreme Court opinion of Justice Marshall referred to the Seventh Circuit theory that "the [firearm] statutes might impermissibly delegate to the Executive Branch the Legislature's responsibility to fix criminal penalties." 442 U.S. at 125–6, 99 S.Ct. at 2205. The Court rejected the theory, at least in its application to prosecutorial discretion to choose between different statutes imposing different penalties. The Court said "Congress fulfilled its duty" when it supplied "the range of penalties that prosecutors and judges may seek and impose." *Id.*

In the present context, it would seem that statutory determination of *maximum* sentences and fines likewise fulfills Congressional duty. A more serious question is presented when Congress requires no *minimum* punishment, but the Commission does. If the minimum punishment provisions of the Guidelines were considered essentially recommendations to the trial and appellate courts, the delegation argument would lose its power. In the alternative, it may be concluded that defendants are insisting on an over-refinement of what may be implied in *Grimaud*. Congress has made clear that disparate sentencing is the evil it wishes to alleviate. Like it or not, minimum as well as maximum limits of punishment must necessarily be formulated to achieve that legislative objective. *See* 28 U.S.C. § 994(b)(2) (limiting range to 25%).

While a different result could surely be reached by the Supreme Court on this troubling issue, the unlawful delegation argument of defendants goes well beyond current law and has not persuaded judges in other districts. I believe it would be unsound to impose that doctrine on parties in this district.

I am largely persuaded by the opinion of Judge Enright in *United States v. Ruiz-Villanueva*, 680 F.Supp. 1411, 1988 WL 16325, 1988 U.S.Dist. Lexis 1728 (S.D.Cal.). It is my conclusion, however, that the work of the Commission in carrying out the Con-

gressional mandate can more conventionally be described as executive rather than judicial. Whether or not it qualifies as an independent agency the Commission should be judicially characterized as having Executive Branch status.

Voluntary service of Article III judges in the Executive Branch is sanctioned by the history of judicial conduct as early as the Washington and Adams administrations, is not forbidden by the constitutional prohibition on dual service (applicable to members of Congress), and has continued occasionally from the Truman administration to date. The service of Justice Jackson as prosecutor at Nuremberg and the White House service of then-district Judge Collet of this court were notably non-judicial in nature.[2] While such temporary departures from judicial service without resigning judicial office have been subject to criticism as a matter of public policy, I am not persuaded there is a constitutional impediment to such voluntary service. See *In re President's Commission on Organized Crime (Subpoena of Scarfo)*, 783 F.2d 370 (3d Cir. 1986).

Because, as Judge Enright points out, Sentencing Commission service is intimately connected with judicial functions, there would seem to be less ground for criticism of dual service than in the *Scarfo* case. The contrary result, which has been reached by Judge Brewster in *United States v. Arnold*, 678 F.Supp. 1463, 1988 WL 11600, 1988 U.S.Dist. Lexis 1416 (S.D. Cal.), would deprive the Sentencing Commission of judicial insights in order to protect the independence of the judiciary. This would be a regrettable and unnecessary insistence on maintenance of functional purity.

Characterizing the Sentencing Commission as an Executive Branch agency avoids any problem that would otherwise exist relating to the Presidential power of removal.[3]

This opinion does not imply that I have no serious doubts about some parts of the Sentencing Guidelines and the legality of their anticipated operation. On the contrary, I believe it appropriate to flag in particular the anomaly of judicial use of a preponderance of evidence standard in making findings that enhance punishment, as seems generally to be expected although not directed by the Guidelines. Even though such a standard has been permitted for the Parole Commission (*Fatico v. Kerr*, 569 F.Supp. 448, 453 (W.D.Wis.1983)), there are strong policy arguments and possibly constitutional arguments against judicial enhancement of punishment without an admission of misconduct or clear and convincing evidence of alleged misconduct that goes beyond the minimum required by the indictment. *United States v. Lee*, 818 F.2d 1052, 1058 (2d Cir.1987) (Oakes, J. concurring); *United States v. Fatico*, 458 F.Supp. 388, 408–412 (E.D.N.Y.1978). I have previously used the *Fatico* standard of proof for contested facts in sentencing, without encountering the problems foreseen by the *Lee* majority opinion. See *United States v. Cox*, 556 F.Supp. 812, 814 (W.D.Mo.1983). Absent appellate guidance to the contrary, I expect to continue this practice.

Sentencing will proceed under the Guidelines. SO ORDERED.

SCOTT O. WRIGHT, Chief Judge, dissenting with the results.

While the undersigned Judge favors the Guidelines and the legislative purposes behind them, I believe that because of one glaring constitutional flaw, one not directly addressed by the parties or the Court en banc, the Sentencing Guidelines, as enacted, are constitutionally infirm. Therefore, I must respectfully dissent from the conclusion by my fellow judges upholding the Constitutionality of the Sentencing Guidelines.

---

**2.** Judge Collet served on the Railway Labor Board in 1945, as administrator of the Office of Economic Stabilization in 1945–6, and thereafter as a presidential consultant. *History of the Eighth Circuit* (Judicial Conference Bicentennial Committee, 1977).

**3.** Even if Judge Brewster's arguments were well taken, the Guidelines would probably survive, subject to reconsideration by a restructured Commission. *Buckley v. Valeo*, 424 U.S. 1, 142, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976).

Specifically, the undersigned would find that the Guidelines are unconstitutional because they were enacted in violation of Article I, §§ 1 and 7 of the United States Constitution. Article I, § 1 provides, in pertinent part, that "All legislative powers herein shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Article I, § 7 provides, in relevant part, that: "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it becomes a Law, be presented to the President of the United States."

The undersigned's conclusion that the Guidelines violate these two Constitutional provisions rests on the following premises. First, the delegation by Congress to the United States Sentencing Commission to establish Sentencing Guidelines which, among other things, restricts the sentencing discretion of federal judges is a delegation of a legislative, rather than an executive or judicial, function. Second, because the Guidelines, in addition to changing the way defendants are sentenced in federal courts, severely restrict the previously broad legislative grant of sentencing discretion in federal judges, then the Guidelines are essentially "legislation" which must, under Article I of the United States Constitution, be passed by a majority of the House and Senate, and must be presented to the President. Third, Congress may not constitutionally delegate its power to limit the sentencing discretion of federal judges to an independent, seven-member commission within the judiciary because such a delegation would, in effect, give such a commission the power to "regulate" federal judges, i.e., such a restriction can only be accomplished legislatively via Article I, § 7's requirements of majority passage and presentment. The undersigned Judge offers the following in support of these conclusions.

The starting point in this analysis is the Supreme Court's recent pronouncements in *I.N.S. v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In *Chadha*, an alien challenged § 244(c)(2) of the Immigration and Naturalization Act which authorized either House of Congress, by resolution, to invalidate the decision of the Executive Branch, pursuant to authority delegated by Congress to the Attorney General, allowing a particular deportable alien to remain in the United States. By resolution, the House, pursuant to § 244(c)(2), "vetoed" the Attorney General's suspension of Chadha's deportation proceeding. The issue before the Court was whether this "legislative veto" provision violated Article I, §§ 1 and 7 of the United States Constitution.

The Court held that since the action taken by the House was essentially legislative in purpose and effect, then the resolution was subject to the procedural requirements of Article I, § 7 for legislative action: passage by a majority of both Houses and presentment to the President. 462 U.S. at 956–957, 103 S.Ct. at 2787. The Court, in concluding that the House resolution was "legislative" and, thus, subject to Article I, reasoned that:

> "Whether actions taken by either House are, in law and fact, an exercise of legislative power depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" (citation omitted) 462 U.S. at 952, 103 S.Ct. at 2784.[1]

In light of *Chadha*, it appears that the Guidelines are unconstitutional. As *Chadha* establishes, any act by Congress that is deemed to be legislative must, under Article I, be passed by a majority of both Houses and be presented to the President for his approval or disapproval. A fair reading of *Chadha* also leads to the conclu-

---

1. In commenting on the Constitutional scheme for separation of powers, the Court further noted that:

   "The Constitution sought to divide the delegated powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial, to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility. The hydraulic pressure inherent within each of the separate branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." 462 U.S. at 951, 103 S.Ct. at 2784.

sion that a valid delegation of Congress' *legislative authority* must comport with the procedural constrictions of Article I, § 7. In other words, Congress clearly cannot delegate its power to create legislation in a manner that would contravene Article I's requirements of majority passage and presentment.[2]

Therefore, if the Guidelines are deemed "legislation," rather than merely rulemaking, then before they could become binding on the Judiciary as an Act of Congress through its delegatee, the U.S. Sentencing Commission, the Guidelines must first be passed by both Houses and presented to the President. The mere fact that, for the sake of convenience, Congress provided that the Guidelines would become binding on the Judiciary unless Congress disapproved or modified the Guidelines, would not appear to change this conclusion if the Guidelines are in fact legislation rather than rulemaking. *See I.N.S. v. Chadha*, 462 U.S. at 959, 103 S.Ct. at 2788 ("There is no support in the Constitution or decisions of this Court for the proposition that the cumbersomeness and delays often encountered in complying with explicit constitutional standards may be avoided, either by Congress or by the President."). Therefore, the issue is whether this independent Commission has enacted what is, in effect, "legislation" through this delegation by Congress. For a number of reasons, there is strong support for the conclusion by this Judge that the nature of the Guidelines are such that they should properly be categorized as "legislation" rather than validly promulgated administrative rules.

As noted in *Chadha*, the test for determining whether action by Congress, or its delegatee, is to be regarded as an exercise of legislative power is "whether [it] contains matter which is properly regarded as *legislative in character and effect.*" (emphasis added) 462 U.S. at 952, 103 S.Ct. at 2784. Here, it is clear that the character,

as well as the effect, of these Sentencing Guidelines is legislative. First of all, the Supreme Court has consistently held that "the power to define criminal offenses and to prescribe the punishments ... resides wholly in Congress." *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980). *See also Gore v. United States*, 357 U.S. 386, 393, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405 (1958) (Apportionments of punishment are questions of legislative policy). More notably, however, is the fact that the Guidelines go further in their scope than just changing the method by which defendants are sentenced in federal courts; rather, the primary purpose of the Guidelines is to curtail the previously broad sentencing discretion of Article III Judges. Because the net effect of the Guidelines is to limit the sentencing discretion of federal judges, then what Congress has done here is delegate to an independent, seven-member Commission, which is appointed by the President, the power to "regulate" federal judges by limiting their sentencing discretion. Surely, any Congressional limitations on the sentencing discretion of federal judges, under a previous grant of Congressional authority, can only be accomplished via a legislative act, requiring passage by both Houses and presentment to the President. While Congress has the authority to delegate both its power to establish sentencing guidelines and its power to curtail its grant of sentencing discretion to federal judges, *see e.g., Geraghty v. U.S. Parole Commission*, 719 F.2d 1199, 1211 (3rd Cir. 1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984), Congress cannot delegate these legislative functions to a commission so as to bypass Article I's requirements of majority passage and presentment.

Furthermore, the fact that Congress reserved the right to accept or reject the Guidelines, via the Constitutionally permis-

---

**2.** Thus, the issue here is not merely the question of whether the legislative function of establishing sentencing guidelines is a delegable or nondelegable function. Rather, the question of serious concern to this Judge is whether *the manner* in which Congress delegated this legislative

function—giving the Commission the power to formulate Guidelines that would have the force and effect of law unless Congress either modified or rejected them—violates the Article I principles of bicameralism and presentment.

sible route of majority passage and presentment, also lends support to the proposition that the Guidelines are "legislation" rather than administrative rulemaking.[3] Thus, the implementation of these Guidelines by the Commission appears to be more than a mere regulatory function since such "regulation" of federal judges would have to rest within either the Judiciary or Congress, rather than in a newly established, independent "federal agency" within the Judiciary. Consequently, the case law which has generally upheld the delegation of certain legislative authority to the Executive and other independent agencies is inapposite since those agencies regulate private conduct, rather than the sentencing performed by this third branch of the United States Government.[4]

Therefore, it is the opinion of this Judge that the Sentencing Guidelines established by the U.S. Sentencing Commission are unconstitutional because they are, in purpose and effect, binding "legislation" which must, in order to become a valid enactment, be passed by a majority of both Houses and be presented to the President. In light of this conclusion, and until Congress sees fit to adopt the Guidelines in the manner prescribed by Article I (or until the Eighth Circuit Court of Appeals or the United States Supreme Court provides a definitive answer to this question, as well as the other constitutional concerns raised by this Commission and its Guidelines), it is this Judge's intention to utilize the Guidelines strictly on an advisory basis.[5] If it appears that a defendant's criminal conduct is governed by the Guidelines, then the undersigned will utilize them in determining the appropriate sentence. In those rare instances where a defendant's conduct falls outside of the Guidelines, or where, in my

---

3. In a very recent opinion issued by the District of Minnesota, Judge Heaney, in concluding that the establishment of the U.S. Sentencing Commission violates separation of powers principles by having the judiciary perform a "legislative function," also reached the following conclusion:

"The extensive hearings, elaborate fact-finding processes, and myriad policy decisions undertaken by the Commission in promulgating general rules of future applicability ... are clear evidence that the *Commission has performed the legislative function of prescribing the punishment for crime ...*" (emphasis added). *U.S.A. v. Estrada*, 680 F.Supp. 1312, 1324 (D.Minn.1988).

*See also Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775, 780 (1987) (Pennsylvania Supreme Court concludes that the Pennsylvania Commission on Sentencing is not an administrative agency charged with administering the law; rather, such a commission can be properly classified as a "legislative agency.").

4. While there is significant authority for the proposition Congress can, after laying down intelligible principles and standards, delegate its legislative authority to an independent agency or commission, this Judge has not been able to find any case law supporting the proposition that Congress can delegate to an independent agency or commission the power to, in essence, "regulate" federal judges by enacting binding sentencing guidelines which restrict the sentencing discretion of Article III Judges and which have the force and effect of law.

5. In fact, Senator Edward Kennedy, who, along with Senator Strom Thurmond, was author of the Comprehensive Criminal Control Act of 1984, originally intended that sentencing guidelines were to be advisory, rather than mandatory. In a law review commentary, Senator Kennedy noted:

"S. 1437 would require that the sentencing judge pay deference to the guidelines concerning both the decision governing the appropriate type of sentence (e.g., fine, probation, imprisonment, or some combination thereof) and the decision on the length or amount of the sentence. But deference is not a duty; the court would not be bound by the guidelines. Section 2003 would require only that the sentencing judge 'consider' the sentencing range applicable to the case under the guidelines and any applicable policy statements issued by the Commission.

In addition, the bill contains a requirement that the court, at the time of sentencing, state reasons for the imposition of the sentence. It also would require, in cases where the sentence imposed falls outside the guidelines, that the court state the specific reason for issuing a nonconforming sentence. For the first time, the trial courts would be obliged to articulate their justifications for sentences, by explaining why the guidelines do not adequately take into account all of the pertinent circumstances of particular cases. By mandating that each sentence falling outside the guidelines be accompanied by an explanation, S. 1437 would greatly enhance the fairness and accountability of our federal criminal sentencing process." Kennedy, *Toward a New System of Criminal Sentencing: Law and Order*, 16 Amer.Crim.L.Rev. 353, 374 (Spring 1979).

discretion, I decide to reject the utilization of the Guidelines in a given case, I shall set forth my reasons for finding that the Guidelines are inapplicable or that it is a proper case for departure.[6]

---

6. The undersigned does not address, nor do I feel it appropriate at this time to address, the issue of whether a preponderance of the evidence, a clear and convincing, or some other standard should be applicable to the Guidelines in making findings that enhance punishment since that issue has not been raised and is not presently before the Court.