UNITED STATES of America, Plaintiff,

v.

**Elana Roxanne TERRILL, Defendant.**

**No. 88–00013–06–CR–W–JWO.**

United States District Court,
W.D. Missouri, W.D.

June 13, 1988.

Patrick Lysaught, Kansas City, Mo., for defendant.

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

MEMORANDUM AND ORDERS

JOHN W. OLIVER, Senior District Judge.

I

A.

This case pends on the motion of defendant Elana Roxanne Terrill for an order declaring the Sentencing Guidelines to be

invalid.[1] Defendant Terrill's suggestions in support of that motion "incorporates and adopts by reference all arguments set forth in the suggestions and briefs filed by the Office of the Federal Public Defender in support of the same motion filed February 25, March 8 and March 24, 1988 in the matter entitled *United States of America v. Keith D. Thorne*, 87–00280–01–CR–W–3." The government's suggestions in opposition are, in the same manner, based on the briefs filed by the Department of Justice and by the Sentencing Commission in the *Thorne* case.[2]

The briefs filed in *Thorne* were the same briefs considered by the Western District of Missouri judges who heard the arguments to which Judge Sachs made reference in *United States v. Johnson*, 682 F.Supp. 1033 (W.D.Mo.1988). Based on his consideration of the briefs filed in *Thorne* and the oral argument heard by the judges of this Court,[3] Judge Sachs stated in his April 1, 1988 opinion in *Johnson* that "it is my conclusion, and I am authorized to say it is the view of three other judges of this district who have presently formed an opinion, that the Guidelines are not subject to valid challenge based on claims that (1) the Sentencing Commission lacks constitutional status or (2) there has been an unconstitutional delegation of legislative power." 682 F.Supp. at 1033–34.

Judge Sachs' opinion in *Johnson* shows that Judges Hunter, Bartlett, and Whipple generally agree with his view that the Guidelines are not invalid. *Id.* at 1033. Chief Judge Wright filed an opinion "dissenting with the results" on April 5, 1988. *Id.* at 1035–39. Judges Collinson, Clark, and I considered the briefs and heard the oral arguments but did not indicate any view with regard to the questions presented. Nor did Judge Stevens, who did not hear the oral arguments, express any view.

At the time Judge Sachs and Chief Judge Wright handed down their opinions in *Johnson*, none of the defendants in any of the criminal cases that pended on my docket had filed any motion challenging the Guidelines.[4] Accordingly, I refused to indicate even a tentative view in *Johnson* in regard to the validity of the Guidelines. For I was satisfied that to have done so would have violated long-established principles of justiciability by rendering what could be no more than an advisory opinion. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3529.1 at 293 (1984), citing the leading case of *Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968), accurately states that the "oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opin-

**1.** Defendant Elana Roxanne Terrill is one of six defendants named in a nine-count indictment charging her and her five codefendants in Count 2 with a conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Count 9 of the indictment charged Terrill and two of her codefendants with the distribution of cocaine within 1000 feet of a public elementary school in violation of 21 U.S.C. § 845a and 18 U.S.C. § 2. Terrill entered a plea of guilty to Count 9. The government has agreed to move to dismiss Terrill from the conspiracy count (Count 2) at the time of sentencing.

**2.** In addition to adopting the briefs filed in *Thorne,* the government's response stated that it "adopts the oral argument made by the United States before the United States District Court for the Western District of Missouri sitting *en banc* on March 25, 1988." Strictly speaking, the judges who heard the oral arguments were not "sitting *en banc*." No order similar to the April 22, 1988 order of the Central District of Califor-

nia entered in the *Lopez* case, which I will cite later, was entered by this Court.

The judges of this court simply agreed to sit together as an accommodation to counsel who traveled from Washington, D.C. to present their respective arguments.

**3.** The principal argument for the defendants was made by Patti A. Goldman, Esq., of the Public Citizen Litigation Group of Washington, D.C. Thomas Millet, Esq., Senior Trial Counsel, Civil Division of Washington, D.C., presented argument on behalf of the Department of Justice. Donald A. Purdy, Jr., Esq., Deputy General Counsel of Washington, D.C., argued on behalf of the Sentencing Commission.

**4.** Defendant Terrill's motion for an order declaring the Guidelines invalid was the first challenge made by any defendant in a case on my docket. That motion was not filed until May 13, 1988, long after the opinions in *Johnson* were handed down.

ions." [5]

The pending motion of defendant Terrill must be decided. For I now have a case properly before me for decision and I am under duty to decide it. As Chief Justice Marshall pointed out a long time ago in *Cohens v. Virginia,* 6 Wheat. (19 U.S.) 264, 5 L.Ed. 257 (1821): "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.... Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty." *Id.* 6 Wheat (19 U.S.) at 404, *cited in* 13 C. Wright, *supra,* § 3529 at 284 n. 17.

It is much easier for me to make my decision than it was for either Judge Sachs or Chief Judge Wright in *Johnson.* For I have the benefit of numerous opinions that have been handed down since they were required to decide *Johnson.* [6] What has been said in a number of those opinions makes it unnecessary for me to do any more than cite the cases in which the questions presented by defendant Terrill's motion have been decided in accordance with my view of the applicable law.

The cases that I will cite have discussed those questions with such care and in such detail that there is little that I could add that would be helpful to the appellate courts that will ultimately make the controlling decision.

I turn therefore to the cases which, in my best judgment, properly conclude that the Guidelines are not constitutionally valid.[7]

### B.

(1) *United States v. Estrada,* 680 F.Supp. 1312 (D.Minn.1988).

As noted above, Chief Judge Wright had the benefit of Judge Heaney's opinion in *Estrada* before he wrote his dissent in *Johnson.* Indeed, Chief Judge Wright quoted *Estrada* with approval in footnote 3 of his dissenting opinion in that case. Circuit Judge Heaney was sitting by designation as a district judge in the District of Minnesota when he wrote *Estrada.*

I agree with Judge Heaney's ultimate conclusion that the Guidelines are unconstitutional for the reasons he stated in detail.[8]

(2) *United States v. Bolding,* 683 F.Supp. 1003 (D.Md.1988) (1988 Westlaw 33142).

I agree with the unanimous opinion of thirteen judges of that court which was filed in support of that court's April 14, 1988 order that declared the Sentencing Reform Act of 1984 unconstitutional.

I entertain some doubt whether I would have agreed with the concluding sentences of the *Bolding* opinion which, after being

---

**5.** Professors Wright, Miller and Cooper quote extensively from *Flast v. Cohen* in their § 3529 at 281. In addition to that quotation from *Flast,* see 392 U.S. at 96, 88 S.Ct. at 1950, where the Court also stated that when "the federal judicial power is invoked to pass upon the validity of actions by the Legislative and Executive Branches of the Government, the rule against advisory opinions implements the separation of powers prescribed by the Constitution and confines federal courts to the role assigned them by Article III."

**6.** Chief Judge Wright, unlike Judge Sachs, did have the benefit of Judge Heaney's comprehensive decision in *United States v. Estrada,* 680 F.Supp. 1312 (D.Minn.1988). *Estrada* has been cited and followed in many of the cases that have concluded that the Guidelines are constitutionally invalid.

**7.** While I may, and in fact, do not agree with everything that is said in the cases to be cited, I

do not believe that it would serve any useful purpose to pinpoint the areas of my disagreement. For I am satisfied that the analysis and rationale of the cases with which I agree fully answer the arguments presented by the briefs filed in the *Thorne* case in this Court and the oral arguments made by Washington, D.C. counsel for the Department of Justice and for the Sentencing Commission.

**8.** I am not sure that I would have concurred in part VII—Severability—of Judge Heaney's opinion, 680 F.Supp. at 1336–38. I therefore indicate no view in regard to that question. For it is not necessary that I do so for purposes of ruling defendant Terrill's motion in this case. Nor will it be necessary when I impose defendant Terrill's sentence. For she is subject to a mandatory minimum one-year sentence regardless of the Guidelines.

modified by an April 20, 1988 memorandum to counsel in that case, stated:

In accordance with this ruling, Bolding will be sentenced under pre-existing law. However, we have concluded that we will, out of respect for a Congressional enactment of such magnitude, generally follow the practice of sentencing defendants committing offenses on or after November 1, 1987 under the 1984 Act until the constitutionality of the Act has been finally decided.

I need not reach that question in deciding defendant Terrill's motion or in imposing her sentence and therefore leave that question open for another day when I may be required to decide it.

(3) *United States v. Lopez*, 684 F.Supp. 1506 (C.D.Cal.1988) (1988 Westlaw 42403) (en banc).

The Central District of California considered twenty-nine cases En Banc pursuant to a formal order entered April 22, 1988. I agree with the majority opinion written by Senior Judge Hauk and with the ultimate conclusion of that court that the Sentencing Reform Act of 1984 and the Guidelines promulgated pursuant to the Act are unconstitutional and invalid.[9]

(4) *United States v. Brodie*, 686 F.Supp. 941 (D.D.C.1988) (1988 Westlaw 52990).

Although Judge Harold Greene's opinion in *Brodie*, like Judge Heaney's opinion in

*Estrada*, reflects the work of a single judge, I state my agreement with *Brodie* because I generally agree with Judge Greene's careful analysis of the controlling Supreme Court cases.[10]

## II

It is appropriate to add that my decision in this case has considered only the questions presented in defendant Terrill's motion and the arguments presented in the briefs filed in *Thorne*. Anyone who has read the numerous opinions that are currently being handed down cannot help but become familiar with a host of additional questions that may not be put in focus without conducting a plenary evidentiary hearing to determine factual questions that may be relevant under the circumstances.

Judge Leisure, for example, in his opinion in *United States v. Olivencia*, No. 88 CR 64 (S.D.N.Y. Apr. 20, 1988) (1988 Westlaw 36487), stated in his footnote 2 that the "Hon. Kevin Thomas Duffy, United States District Judge in this District, was highly critical of the substance of the guidelines in an oral opinion rendered recently. *United States v. Martinez*, 87 Cr. 1020 (KTD) (S.D. N.Y. April 11, 1988)." He stated that Judge Duffy was "concerned that '[t]he way the guidelines were set up makes it obvious to me ... that there will be an explosion in the prison population.' Record at 4."

---

**9.** Order 3 of the en banc opinion in *Lopez* stated that: "It is further ordered that this decision and order is certified for such immediate appeal or writ as is available under Federal statutes and appellate procedure, particular 28 U.S.C. §§ 1252, 1254(1), 1292, and 2101(e); and Rule 18 of the Supreme Court Rules; and in this connection the Court is of the opinion that this decision and order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the decision and order may materially advance the litigation; and further, the Court believes that this case is '... of such imperative public importance as to justify the deviation from normal appellate practice and to require immediate settlement in this (Supreme) Court.'"

Judge Hupp's dissenting opinion stated that: "We entirely agree with paragraph 3 of the order, urging prompt review of the question in

the Court of Appeals and recommending that the Supreme Court take the matter directly and decide it promptly. The question at issue affects cases daily in every federal court in the country, and the public interest is that it be decided definitively and promptly."

I would have joined in the unanimous view thus expressed by the Central District of California sitting en banc even though that case, as most of the cases, considered only the question whether the Act and Guidelines were facially unconstitutional and did not consider the question I will discuss in part II of this opinion.

**10.** Judge Greene adopted the substance of the concluding sentences of the District of Maryland's opinion in *Bolding* before those sentences were modified by that court's April 20, 1988 memorandum. I have the same reservation in that regard that I have stated in my discussion of *Bolding*.

The question whether the Guidelines were promulgated in a manner that will cause an "explosion in the prison population" raises the question whether the Commission did, in fact, comply with the provisions of the Act that were obviously designed to prevent such an explosion from occurring. For Section 994(g) of Title 28, U.S.C., made clear that the Congress imposed two separate mandatory duties on the Commission in that section. First, Congress provided that in promulgating guidelines the Commission "shall take into account the nature and capacity of the penal, correctional, and other facilities and services available, and shall make recommendations concerning any change or expansion in the nature or capacity of such facilities and services that might become necessary as a result of the guidelines promulgated pursuant to the provisions of this chapter."

Second, and perhaps of greater importance, Section 994(g) provided that the "sentencing guidelines prescribed under this chapter shall be formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission."

The September 1987 issue of The Third Branch published by the Administrative Office of the United States Courts contained a report of an interview with J. Michael Quinlan, the new Director of the Bureau of Prisons. Director Quinlan is reported as saying:

My biggest concern is the growing inmate population. In 1981, our population was 24,000; today it is 44,000. The Bureau of Prisons has grown 83 percent in six and a half years and is now 58 percent over its design capacity. The pro-

jections with the sentencing guidelines and the Anti–Drug Abuse Act indicate that there may be as many as 100,000 people in the federal prisons by 1997.[11]

The obvious question that will undoubtedly be presented in some future case is whether the Sentencing Commission correctly construed the limitations imposed on it by Section 994(g) or whether it, in fact, disregarded the Congressional mandate. That question will have to be decided in accordance with the following principles most recently stated in *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984), and the cases cited therein:

The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. See, *e.g., FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, [102 S.Ct. 38, 42, 70 L.Ed.2d 23] (1981); *SEC v. Sloan,* 436 U.S. 103, 117–118 [98 S.Ct. 1702, 1711, 56 L.Ed.2d 148] (1978); *FMC v. Seatrain Lines, Inc.,* 411 U.S. 726, 745–746 [93 S.Ct. 1773, 1784–1785, 36 L.Ed.2d 620] (1973); *Volkswagenwerk v. FMC,* 390 U.S. 261, 272 [88 S.Ct. 929, 935, 19 L.Ed.2d 1090] (1968); *NLRB v. Brown,* 380 U.S. 278, 291 [85 S.Ct. 980, 988, 13 L.Ed.2d 839] (1965); *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 385 [85 S.Ct. 1035, 1042, 13 L.Ed.2d 904] (1965); *Social Security Board v. Nierotko,* 327 U.S. 358, 369 [66 S.Ct. 637, 643, 90 L.Ed. 718] (1946); *Burnet v. Chicago Portrait Co.,* 285 U.S. 1, 16 [52 S.Ct. 275, 281, 76 L.Ed. 587] (1932); *Webster v. Luther,* 163 U.S. 331, 342 [16 S.Ct. 963, 967, 41 L.Ed. 179]

---

11. The April 16, 1987 issue of the News and Views of the Probation Division of the Administrative Office of the United States Courts stated substantially the same figures and projected an inmate population of "67,000 prisoners by fiscal year 1993."

It is thus apparent that the Bureau of Prisons projects a 67,000 inmate population by 1993 and an increase to 100,000 by 1997. News and Views then stated that: "As a consequence *of*

*this inmate explosion,* the Department of Justice has proposed a budget increase of $165.4 million in fiscal 1988, for prison expansion, modernization, and repair projects." (Emphasis added). It remains to be seen how the Congress will respond to that proposal and to additional proposals in the years to come that will necessarily be presented in order to keep up with the projected increases in the federal prisoner population.

(1896). If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

Such a question was not raised by defendant Terrill's motion. Nor was it discussed in the briefs filed in *Thorne.*[12] Ms. Goldman, in her oral argument on behalf of the defense, stated: "We have not raised statutory challenges to what the Commission has done." Tr. 22. We therefore do not reach that question or other questions that may relate to the manner in which the Commission may or may not have complied with the intention of Congress as stated in the Act.

### III

For the reasons stated, it is

ORDERED (1) that defendant Terrill's motion for order declaring Sentencing Guidelines invalid should be and the same is hereby granted. It is further

ORDERED, ADJUDGED AND DECREED (2) that the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 should be and the same are hereby declared to be unconstitutional and invalid in regard to defendant Terrill.

---

12. Another facet of the Section 994(g) question is put in focus by Chief Justice Rehnquist's opinion concurring in the judgment in *Industrial Union Dept. v. American Petroleum Institute,* 448 U.S. 607, 671, 100 S.Ct. 2844, 2878, 65 L.Ed. 2d 1010 (1980), and by his dissenting opinion in *American Textile Manufacturers Institute v. Donovan,* 452 U.S. 490, 543, 101 S.Ct. 2478, 2507, 69 L.Ed.2d 185 (1981), for the reasons I outlined on pages 55–56 of the transcript of the oral argument. Limitations of time prevented the development of that question at the oral argument.