UNITED STATES of America, Plaintiff,

v.

Pedro SERPA, Defendant.

UNITED STATES of America, Plaintiff,

v.

Jeffrey L. WILL, Defendant.

UNITED STATES of America, Plaintiff,

v.

William RUIZ-VARGAS, Defendant.

Nos. CR87-L-45, CR87-L-44 and CR87-L-44(02).

United States District Court,
D. Nebraska.

July 12, 1988.

Michael P. Norris, Asst. U.S. Atty., Omaha, Neb., for plaintiff.

James E. Hoppe, Lincoln, Neb., for defendant William Ruiz-Vargas.

Kirk E. Naylor, Jr., Lincoln, Neb., for defendant Pedro Serpa.

Richard Scott, Lincoln, Neb., for defendant Jeffrey L. Will.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO INVALIDATE THE GUIDELINES PROMULGATED BY THE UNITED STATES SENTENCING COMMISSION

STROM, Chief Judge, and URBOM, District Judge.

On June 17, 1988, this court, sitting *en banc,* heard arguments on the defendants' motions to declare unconstitutional the United States Sentencing Commission's guidelines. Because the guidelines obey the congressional legislation requiring them, the motions by necessary implication also strike at portions of the legislation. The United States Supreme Court's decision on June 13, 1988, to grant a writ of certiorari *sub nom.* to the petitioners in *Mistretta v. United States,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920, demonstrates the importance of the issues presented here. Though our decision will be but a kernel in the bushel of lower court opinions on the sentencing guidelines, the defendants, who have pleaded guilty to crimes committed since the effective date of the guidelines, are deserving of a prompt and thoughtful response to their motions. Considering the host of opinions

already furnishing in-depth discussions of the Sentencing Reform Act's history and mechanics, as well as careful analyses of relevant constitutional issues, we choose to avoid duplication of efforts by simply silhouetting our conclusions of law.

The defendants attack the Sentencing Commission's guidelines as violative of the separation-of-powers doctrine and of the defendants' fifth amendment due process rights.

## I. SEPARATION OF POWERS

As to the separation-of-powers doctrine, there are two related issues: whether placement of the Sentencing Commission in the judicial branch violates the doctrine; and, given the function and composition of the Sentencing Commission, whether the President's power to appoint and remove the commissioners unconstitutionally infringes upon the authority of another branch of government.

Our analysis differs from those of most other judges who have considered similar challenges in that we find the Sentencing Commission's function to be primarily legislative, rather than executive. Under 28 U.S.C. § 994(a)(1), the Commission is required to promulgate and distribute guidelines to all federal courts, and pursuant to 18 U.S.C. § 3553(b), federal judges are required to impose sentences that are within a narrow range fixed by the guidelines. The Commission has set very specific guidelines, according to which it has effectively limited the range of sentences to be uniformly applied to all persons convicted of the same offense. The Commission also is empowered to establish general policies as necessary to carry out the purposes of the Act. See 28 U.S.C. § 995(a)(1).

In following the guidelines, federal judges have received a diminution of their historical power to exercise discretion in imposing sentences on convicted persons. The Act has restructured the entire sentencing process in this country. It has withdrawn power that traditionally was entrusted by Congress to the judiciary and has imposed upon federal judges rigid limitations that were nonexistent under the previous sentencing system. The power to make such drastic changes in the policies and mechanics of the sentencing procedure in this country is legislative. The Sentencing Reform Act has delegated legislative power to the Commission to impose restrictions upon the power of the judiciary.

The power vested in the judicial branch under Article III is the power to decide cases and controversies. In distinguishing between judicial and legislative power, the Supreme Court has stated that if a court "will be laying down new rules, to change present conditions and to guide future action and is not confined to definition and protection of existing rights," then the court is exercising legislative power. *See Keller v. Potomac Electric Power Co.*, 261 U.S. 428, 440, 43 S.Ct. 445, 448, 67 L.Ed. 731 (1923). The Court explained that "[l]egislation ... looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Id.* at 440–41, 43 S.Ct. at 448.

The concurring opinion in *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), written by Justice Stevens and joined in by Justice Marshall, helps to explain the legislative function of the government. The central issue in *Bowsher* was whether the Comptroller General's role in the deficit reduction process under the Gramm–Rudman–Hollings Act was violative of the separation-of-powers doctrine. Justice Stevens stated:

The ... Act assigns to the Comptroller General the duty to make policy decisions that have the force of law.... [T]he Comptroller General's report ... will have a profound, dramatic, and immediate impact on the government and on the Nation at large.

Article I of the Constitution specifies the procedures that Congress must follow when it makes policy that binds the Nation: its legislation must be approved by both Houses of Congress and presented to the President.... "If Congress were free to delegate its policymaking authority to one of its components, or to one of its agents, it would be able to

evade the carefully crafted restraints spelled out in the Constitution." *Bowsher*, 478 U.S. at 714, 755, 106 S.Ct. at 3181, 3203 (Stevens, J., Marshall, J. concurring), quoting *INS v. Chadha*, 462 U.S. 919, 959, 103 S.Ct. 2764, 2788, 77 L.Ed.2d 317 (1983). Justices Stevens and Marshall found that the Comptroller General was exercising legislative authority under the Act and, therefore, his activities were unconstitutional, because they were performed without the benefit of Article I safeguards.

■ Not only is the Sentencing Commission empowered to make policy, but it is also empowered to transplant its will, the guidelines, in the place of what preexisted it, statutorily prescribed maximum sentences employed in conjunction with judicial discretion. The sentencing guidelines, like the preexisting method of sentencing that was established by Congress according to Article I procedural requirements, have the force of law. However, the guidelines were not established according to Article I's procedural requirements and, therefore, are unconstitutional. See dissenting opinion of Judge Scott O. Wright, *United States v. Johnson, et al.*, 682 F.Supp. 1033 (W.D.Mo.1988); *United States v. Brittman*, 687 F.Supp. 1329 (E.D. Ark.1988).

We agree with the opinion of Judge Heaney in *United States v. Estrada*, 680 F.Supp. 1312, 1322 (D.Minn.1988), that "[a] review of the Sentencing Reform Act reveals Congress intended the Commission, in formulating the guidelines, to proceed in a non-judicial manner in performing what has historically been considered a uniquely legislative function—prescribing the punishment for crime." *Id.*

Although most previous courts have found the function of the Commission to be executive in nature, we find this not to be the case. While we acknowledge that "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law," we find that the Commission has gone beyond the bounds of interpretation and has promulgated law.

In the recent Supreme Court opinion that upheld the constitutionality of the independent counsel in *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, —— L.Ed.2d —— (1988), the Court distinguished the judicial function from the executive function. The Court found that the powers delegated by Congress to a special Article III court were not supervisory or administrative in nature, nor were they functions that were constitutionally required to be performed by executive branch officials. Similarly, the powers delegated to the Sentencing Commission are not supervisory or administrative in nature, nor is the prescribing of punishments for crimes constitutionally required to be performed by the executive branch.

Congress' task is to set policy; the executive's is to carry out the policy, interpreting it as necessary to enable the *executive* to perform the policy's commands, not to create new policy, whether by interpretation or refinement or otherwise, for *another branch* to carry out; the judiciary's is to weigh and choose from competing interests within the policy in applying it to specific cases and controversies. The point is that the creating and declaring of perimeters of punishments to be specifically applied by another branch is not executive business or judicial business. It is legislative business.

The impairment-of-function test provided in *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977), is used to determine the extent to which a legislative act has the potential to prevent a branch of the government from accomplishing its constitutionally assigned functions in violation of the separation-of-powers doctrine. The placement of a legislative body in the judicial branch—where the Sentencing Commission has been explicitly declared by Congress to be—and the requirement that three federal judges serve on the Commission—as the statute mandates—impair the judiciary's sole constitutionally assigned function of deciding cases and controversies. Impartiality is the cornerstone of the judicial function, and we find that the impairment of the judiciary's impartiality is obvious, if part of the body drafting the law is also

charged with interpreting it and applying it to specific disputes.

The second aspect of the separation-of-powers issue is whether the statute's granting of appointment and removal power to the President is unconstitutional. In considering whether the "for good cause" limitation imposed upon the President's power to remove an independent counsel appointed pursuant to the Ethics in Government Act violated the separation-of-powers doctrine, the *Morrison* Court, *supra*, distinguished two sets of its opinions. One set holds that Congress has the constitutional power to place restrictions upon the President's power to remove officers of independent commissions that are under the President's control. The other set holds that Congress does not have the power under the Constitution to involve itself in the removal of executive officers. *Id.* 108 S.Ct. at 2616–18, *comparing Wiener v. United States*, 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958) and *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935) *with Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) and *Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926).

Clearly, the President's power to remove the members of the Sentencing Commission, three of whom are federal judges, is an issue logically controlled by those cases that have invalidated Congress' attempts to involve itself in the removal of executive officers. Whether emphasis is placed upon the Commission's legislative function or upon the Commission's location in the judicial branch, the sure conclusion is that the President does not have the power to remove, with or without restrictions, officers of another branch of government.

After the majority in *Bowsher* determined that the Comptroller General was performing essentially executive functions, the Court held that the comptroller could not be entrusted with those powers, because the Congress had retained the authority to remove the Comptroller General. The Court stated that "[i]n constitutional terms, the removal powers over the Comp-troller General's office dictate that he will be subservient to Congress." *Bowsher*, 478 U.S. at 730, 106 S.Ct. at 3191. Under the Sentencing Reform Act, the President has the power to remove the commissioners for cause. According to the logic of *Bowsher* then, the Commission must be subservient to the President. The President's removal power is unconstitutional on the face of the Act, because it purports to be power to remove Article III judges from a commission that is placed in the judicial branch. These judges were appointed to the Sentencing Commission because they were Article III judges; the Act requires them to be such. They, therefore, were not appointed as individuals who coincidentally were members of the judiciary.

Moreover, in view of our finding that the Commission functions as a legislative body, the President's power to remove its members is equally unconstitutional, because the President has not been granted by the Constitution power to control legislative bodies.

## II. DUE PROCESS OF LAW

Given that we have found the guidelines to be unconstitutional under the separation-of-powers doctrine, we can think of no useful reason for deciding whether applying the guidelines is also a violation of the defendants' fifth amendment right to due process of law.

## III. SEVERANCE

■ Circuit Judge Heaney's decision in *United States v. Estrada, supra*, that the parts of the Sentencing Reform Act fathering the sentencing guidelines are severable from the rest of the statute seems proper to us. The standard for determining whether an unconstitutional portion of a statute should be severed from the remaining portions was restated by the Supreme Court in *Alaska Airlines Inc. v. Brock*, 480 U.S. 678, ——, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987):

"The standard for determining the severability of an unconstitutional provision is well established: 'Unless it is evident that the Legislature would not have en-

acted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as law.'"

*Id. quoting Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976). Employing this standard, we find nothing in the legislative history or otherwise to indicate that Congress would not have passed this Act absent the provisions that this court has found to be unconstitutional. Aware of the strong presumption favoring severability, we conclude that the portions of the Act that empower the commission to promulgate guidelines should be severed, permitting Congress' strong policy statements and the other provisions to remain. Accordingly, except for references to the Sentencing Commission and its guidelines and policies, there remain in effect: the purposes of sentencing, the factors to be considered, the kinds of sentences available and the kind of information usable by the sentencing judge, as stated in 18 U.S.C. §§ 3553(a) and 3554–3584; the requirement that the sentencing judge state in open court the reasons for imposing a particular sentence, under 18 U.S.C. § 3553(c); the imposition of "real time" sentences, in 18 U.S.C. § 3624(a) and (b); and the appealability of sentences according to 18 U.S.C. § 3742.

### ORDER

For the reasons provided in the accompanying memorandum,

IT IS ORDERED that:

1. the motions to invalidate the sentencing guidelines submitted by Pedro Serpa, filing 21 in CR87–L–44, by Jeffrey L. Will, filing 27 in CR87–L–44(2) and by William Ruiz–Vargas, filing 138, in CR87–L–45, are granted;

2. the portions of the Sentencing Reform Act that empower the Sentencing Commission to promulgate sentencing guidelines and that require courts to follow those guidelines are unconstitutional and are severed from the remaining provisions of the Act;

3. the sentencing guidelines of the Sentencing Commission are unconstitutional; and

4. these defendants shall be sentenced in accordance with the remaining provisions of the Sentencing Reform Act and, where necessary, in reference to the law as it existed prior to the implementation of the guidelines.